In re TRI–STATE CREMATORY
LITIGATION.

No. MDL 1467.

United States District Court,
N.D. Georgia,
Rome Division.

March 17, 2003.

Robert Harris Smalley, III, McCamy, Phillips, Tuggle & Fordham, Dalton, GA, William G. Colvin, Shumacker & Thompson, Chattanooga, TN, Kenneth S. Canfield, Ralph Irving Knowles, Jr., David Scott Hagy, Doffermyre, Shields, Canfield, Knowles & Devine, Atlanta, GA, Elizabeth Joan Cabraser, Lieff, Cabraser, Heimann & Bernstein, San Francisco, CA, Wendy R. Fleishman, Lieff, Cabraser, Heimann & Bernstein, New York City, Kathryn E. Barnett, Alistair E. Newbern, Lieff, Cabraser, Heimann & Bernstein, Nashville, TN, John W. "Don" Barrett, Barrett Law Office, Lexington, MS, Charles A. Graddick, Sims, Graddick & Dodson, Mobile, AL, Robert Malcolm Darroch, Edwin L. Hamilton, Mabry & McClelland, Atlanta, GA, for Plaintiffs.

McCracken K. Poston, Jr., Office of McCracken Poston, Ringgold, GA, Frank E. Jenkins, III, Jennifer Joy Walker, Jenkins & Olson, Brandon Lowell Bowen, Superior Court of Bartow County, Cartersville, GA, Earl S. Howell, III, Presley, Howell & Simonds, Rossville, GA, Richard I. Metzger, Bruce Allen Taylor, Jr., Lisa Nicole Higgins, Drew, Eckl & Farnham, Atlanta, GA, J. Charles Wilson, Office of J. Charles Wilson, Mobile, AL, Roger S. Sumrall, Lisa Kaye Anderson, Hall, Booth, Smith & Slover, Atlanta, GA, Stephen Leroy Cotter, Maren Rebecca Frost, Swift, Currie, McGhee & Hiers, Atlanta, GA, David C. Higney, Grant, Konvalinka & Harrison, Chattanooga, TN, Thomas Scott Carlock, Mary Katherine Greene, Boyd B. Newton, Carlock, Copeland, Semler & Stair, Atlanta, GA, C. King Askew, Robert Maddox Brinson, Jesse Anderson Davis, Mark Maynard Jackson Webb, Brinson, Askew, Berry, Siegler, Richardson & Davis, Rome, GA, Charles B. Zirkle, Jr., Devon Alexandra Petree, Zirkle & Hoffman, Atlanta, GA, Ronald R. Womack, The Womack Law Firm, LaFayette, GA, Kenneth Lee Millwood, Nelson, Mullins, Riley & Scarborough, Atlanta, GA, John Wallace Campbell, David Charles King, Swift, Currie, McGhee & Hiers, Atlanta, GA, F. Carlton King, Jr., Thomas Albert Croft, King & Croft, Atlanta, GA, Edward H. Lindsey, Jr., Thomas Jeffery Lehman, Goodman, McGuffey, Aust & Lindsey, Atlanta, GA, Thomas Ryan Mock, Jr., Christopher Shane Keith, Hawkins & Parnell, Atlanta, GA, Joseph Christopher Clem, Weill & Weill, Chattanooga, TN, John L. Choate, Vahn Chang, Cozen & O'Connor, Atlanta, GA, David W. Noblit, Kelly Peters Kirkland, Leitner, Williams, Dooley & Napolitan, Chattanooga, TN, Douglas Meriwether Campbell, Boyd M. Patterson, Jr., Campbell & Campbell, Chattanooga, TN, Clifton M. Patty, Jr., Office of Clifton M. Patty, Jr., Ringgold, GA, Brian Campbell Smith, Office of Brian C. Smith, Chattanooga, TN, Harry W. Bassler, Crim & Bassler, Atlanta, GA, Paul L. Weisbecker, Weinberg, Wheeler, Hudgins, Gunn & Dial, Atlanta, GA, Robert Gaines Norred, Jr., Spears, Moore, Rebman & Williams, Chattanooga, TN, Kenneth T. Levine, Martin Henry Karo, Walter J. Wein-

rich, Nelson Levine de Luca & Horst, Blue Bell, PA, Norman Mark Kinsman, Baker, Kinsman & Hollis, Chattanooga, TN, Michael Alan Anderson, Horton, Maddox & Anderson, Chattanooga, TN, James A.S. Wilson, Office of James A.S. Wilson, Chattanooga, TN, Weymon H. Forrester, Forrester & Brim, Gainesville, GA, for Defendants.

Janet Bolt Wray, Robert Andrew Renjel, Atlanta, GA, Robert S. Bomar, Atlanta, GA, for Movant.

Clara C. Marsh, Rock Spring, GA, pro se.

Rhames L. Marsh, Rock Spring, GA, pro se.

## ORDER

HAROLD L. MURPHY, District Judge.

This proposed diversity class action involves claims of breach of contract, breach of the covenant of good faith, breach of fiduciary duty, fraud, negligence, interference with remains,[1] mishandling of corpses, infliction of emotional distress, and unjust enrichment, as well as claims for equitable relief. The case is before the Court on Plaintiffs' Motion to Certify Class Action [176],[2] Plaintiffs' Motion for Designation of Additional Proposed Class Representative [177],[3] and Plaintiffs' Amended Motion to Certify Class Action [271].

## I. Background

In February 2002, the Georgia Bureau of Investigation began an investigation of the events surrounding the finding of human corpses on the property of Defendant Tri–State Crematories, Inc. (Aff. of Kris Sperry, M.D. ¶ 4.) In May 1905, Justice Joseph H. Lumpkin began his scholarly treatment of the law having to do with the handling of the dead with this passage:

> Death is unique. It is unlike aught else in its certainty and its incidents. A corpse in some respects is the strangest thing on earth. A man who but yesterday breathed and thought and walked among us has passed away. Something has gone. The body is left still and cold, and is all that is visible to mortal eye of the man we knew. Around it cling love and memory. Beyond it may reach hope. It must be laid away. And the law—that rule of action which touches all human things—must touch also this thing of death. It is not surprising that the law relating to this mystery of what death leaves behind cannot be precisely brought within the letter of all the rules regarding corn, lumber and pig iron. And yet the body must be buried or disposed of. If buried, it must be carried to the place of burial. And the law, in its all-sufficiency, must furnish some rule, by legislative enactment or analogy, or based on some sound legal principle, by which to determine between the living questions of the disposition of the dead and rights surrounding their bodies. In doing this the courts will not close their eyes to the customs and necessities of civilization in dealing with the dead and those sentiments connected with decently disposing of the remains of the departed which furnish one ground of difference between men and brutes.

*Louisville & Nashville R.R. Co. v. Wilson,* 123 Ga. 62, 51 S.E. 24, 25(1905). With Justice Lumpkin's solemn observations in mind, the Court provides the following background for this case before turning to its analysis of Plaintiffs' Amended Motion to Certify Class Action.

### A. Parties

Plaintiff Carol A. Bechtel is a citizen and resident of Idaho. (Master 1st Am. Class Action Compl. ¶ 4.) She is the daughter and next of kin of Robert Gladstone Swofford and Willie Florence Swofford. (*Id.*)

Plaintiff Paula Yockel is a citizen and resident of Pittsburgh, Pennsylvania. (Master 1st Am. Class Action Compl. ¶ 5.) She is the

---

1. Throughout this Order, unless otherwise noted, the Court follows the convention of the parties, and sometimes uses the word "remains" as synonymous with the words "human remains."

2. The Court denies as moot Plaintiffs' Motion to Certify Class Action in view of Plaintiffs' Amended Motion to Certify Class Action, which the Court considers in this Order.

3. The Court grants Plaintiffs' Motion for Designation of Additional Proposed Class Representative.

daughter and next of kin of Gilbert Schuchman. (*Id.*)

Plaintiff Naomi Webb is a citizen and resident of Brooksville, Florida. (Master 1st Am. Class Action Compl. ¶ 6.) She is the mother and next of kin of Samantha Webb Swinney. (*Id.*)

Plaintiff Thomas G. Conyers, is a citizen and resident of Cincinnati, Ohio. (Master 1st Am. Class Action Compl. ¶ 7.) He is the son and next of kin of Thomas J. Conyers. (*Id.*)

Defendant Tri–State Crematory, Inc. ("Defendant Tri–State") is a Georgia Corporation with its principal place of business in Noble, Georgia. (Master 1st Am. Class Action Compl. ¶ 9.) Defendant Tri–State was apparently administratively dissolved by the Georgia Secretary of State in 1995 for failure to file appropriate administrative returns. (*Id.*)

Defendant T. Ray Brent Marsh is a natural person who is a resident of Walker County, Georgia. (Master 1st Am. Class Action Compl. ¶ 10.) Defendant T. Ray Brent Marsh is the operator and secretary of Defendant Tri–State. (*Id.*)

Defendant Clara C. Marsh is a natural person who is a resident of Walker County, Georgia. (Master 1st Am. Class Action Compl. ¶ 11.) Defendant Clara Marsh is the chief financial officer of Defendant Tri–State. (*Id.*)

Defendant Rhames L. Marsh is a natural person who is a resident of Walker County, Georgia. (Master 1st Am. Class Action Compl. ¶ 12.) Defendant Rhames Marsh is the chief executive officer of Defendant Tri–State. (*Id.*)

Defendant Tommy Ray Marsh is a natural person who is a resident of Walker County, Georgia. (Master 1st Am. Class Action Compl. ¶ 13.) Defendant Tommy Ray Marsh is the registered agent and former owner and operator of Defendant Tri–State. (*Id.*)

Defendants T. Ray Brent Marsh, Clara C. Marsh, Rhames L. Marsh, and Tommy Ray Marsh are collectively referred to as the "Tri–State Defendants."

Defendant Bob Foster d/b/a Foster & Son Funeral Home is a Tennessee sole proprietorship with its principal place of business in Tracy City, Tennessee. (Master 1st Am. Class Action Compl. ¶ 15.)

Defendant Burt Funeral Homes, Inc. is an Alabama Corporation with its principal place of business in Ft. Payne, Alabama. (Master 1st Am. Class Action Compl. ¶ 16.)

Defendant Cagle Funeral Home, Inc. is a Georgia Corporation with its principal place of business in Jasper, Georgia. (Master 1st Am. Class Action Compl. ¶ 17.)

Defendant Cumberland Funeral Services, Incorporated is a Tennessee Corporation with its principal place of business in Monteagle, Tennessee. (Master 1st Am. Class Action Compl. ¶ 18.)

Defendant Cumberland Funeral Home is a Tennessee Company with its principal place of business in Monteagle, Tennessee. (Master 1st Am. Class Action Compl. ¶ 19.)

Defendant Cumberland Funeral Home—Tracy City is a Tennessee Company with its principal place of business in Tracy City, Tennessee. (Master 1st Am. Class Action Compl. ¶ 20.)

Defendant Covenant Funeral Service has its principal place of business in Chattanooga, Tennessee. (Master 1st Am. Class Action Compl. ¶ 21.)

Defendant Erwin–Petitt Funeral Home, Inc. is a Georgia Corporation with its principal place of business in Summerville, Georgia. (Master 1st Am. Class Action Compl. ¶ 22.)

Defendant Ewton Funeral Home, Inc. is a Tennessee Corporation with its principal place of business in Dunlap, Tennessee. (Master 1st Am. Class Action Compl. ¶ 23.)

Defendant Family Mortuary, Inc. is a Tennessee Corporation with its principal place of business in Chattanooga, Tennessee. (Master 1st Am. Class Action Compl. ¶ 24.)

Defendant Foster & Lay Funeral Home is a Tennessee Company with its principal place of business in Tracy City, Tennessee. (Master 1st Am. Class Action Compl. ¶ 25.)

Defendant Franklin–Strickland Funeral Home, Inc. is a Tennessee Corporation with a business located in Chattanooga, Tennes-

see. (Master 1st Am. Class Action Compl. ¶ 26.)

Defendant Gilmore Funeral Home, LLC is a Tennessee Limited Liability Company with its principal place of business in Manchester, Tennessee. (Master 1st Am. Class Action Compl. ¶ 27.)

Defendant Hardwick & Sons Funeral Home, Inc. is a Tennessee Corporation with its principal place of business in Chattanooga, Tennessee. (Master 1st Am. Class Action Compl. ¶ 28.)

The House of Overstreet Mortuary, Inc. is a Georgia Corporation with its principal place of business in Dalton, Georgia. (Master 1st Am. Class Action Compl. ¶ 29.)

Defendant J. Avery Bryan Funeral Home, Inc. is a Tennessee Corporation with its principal place of business in Chattanooga, Tennessee. (Master 1st Am. Class Action Compl. ¶ 30.)

Jesse Jones Funeral Home, Inc. is a Georgia Corporation with its principal place of business in Tunnel Hill, Georgia. (Master 1st Am. Class Action Compl. ¶ 31.)

Defendant Julian Peeples Memorial Chapel Inc., d/b/a Julian Peeples Funeral Home, is a Georgia Corporation with its principal place of business in Dalton, Georgia. (Master 1st Am. Class Action Compl. ¶ 32.)

Defendant Kerby Funeral Home, Inc. is an Alabama Corporation with its principal place of business in Henagar, Alabama. (Master 1st Am. Class Action Compl. ¶ 33.)

Defendant Kerby Funeral Home LLC is an Alabama Limited Liability Corporation with its principal place of business in Albertville, Alabama. (Master 1st Am. Class Action Compl. ¶ 34.)

Defendant Layne Funeral Home, Inc. is a Tennessee Corporation with its principal place of business in Palmer, Tennessee. (Master 1st Am. Class Action Compl. ¶ 35.)

Defendant Love Funeral Home, Inc. is a Georgia Corporation with its principal place of business in Dalton, Georgia. (Master 1st Am. Class Action Compl. ¶ 36.)

Defendant Patton's Funeral Home is a Tennessee business with its principal place of business in Cleveland, Tennessee. (Master 1st Am. Class Action Compl. ¶ 37.)

Defendant Peeples Funeral Home, Inc., d/b/a Peeples Funeral Home, is a Georgia Corporation. (Master 1st Am. Class Action Compl. ¶ 38.)

Defendant Pinkard & Mee Funeral Service, Inc. is a Tennessee Corporation with its principal place of business in Chattanooga, Tennessee. (Master 1st Am. Class Action Compl. ¶ 39.)

Defendant Prime Succession, Inc. is a Delaware corporation with its principal place of business in Erlanger, Kentucky. (Master 1st Am. Class Action Compl. ¶ 40.) Plaintiffs allege that Defendant Prime Succession, Inc. owns, operates, and controls, directly or through subsidiary corporations, Defendant Prime Succession Holdings, Inc., Defendant Prime Succession of Tennessee, Inc., and Defendant Buckner–Rush Enterprises, Inc. (*Id.*)

Defendant Prime Succession Holdings, Inc. is a Delaware Corporation with its principal place of business in Erlanger, Kentucky. (Master 1st Am. Class Action Compl. ¶ 41.)

Defendant Prime Succession of Tennessee, Inc. is a Delaware Corporation with its principal place of business in Erlanger, Kentucky. (Master 1st Am. Class Action Compl. ¶ 42.)

Defendant Buckner–Rush Enterprises, Inc. is a Tennessee Corporation with a place of business in Cleveland, Tennessee. (Master 1st Am. Class Action Compl. ¶ 43.)

Plaintiffs allege that Defendant Prime Succession, Inc. wholly-owns, controls, operates, and uses its subsidiaries, Defendants Prime Succession Holdings, Inc. and Prime Succession of Tennessee, Inc. as alter-egos and mere instrumentalities (collectively, the "Prime Succession Defendants"). (Master 1st Am. Class Action Compl. ¶ 44.) Plaintiffs further allege that the Prime Succession Defendants wholly own, control, and are the alter-egos of Defendant Buckner–Rush Enterprises, Inc., which they use as a mere instrumentality and alter-ego. (*Id.*)

Defendant Putnam Funeral Home, Inc. is a Tennessee Corporation doing business as

Putnam–Reed Funeral Home and Putnam–Standefer–Reed Funeral Home, with business locations in Pikeville, Dunlap, and Whitwell, Tennessee. (Master 1st Am. Class Action Compl. ¶ 45.)

Defendant R.D. Moore Funeral Home, Inc. is a Georgia Corporation with its principal place of business in Trenton, Georgia. (Master 1st Am. Class Action Compl. ¶ 46.)

Defendant R. Dudley Barton & Son Funeral Home, Inc. is a Georgia Corporation with its principal place of business in Adairsville, Georgia. (Master 1st Am. Class Action Compl. ¶ 47.)

Defendant Ryan Funeral Home, Inc. was a Georgia Corporation with its principal place of business in Trenton, Georgia. (Master 1st Am. Class Action Compl. ¶ 48.)

Defendant SCI Alabama Funeral Services, Inc. is a Alabama Corporation with its principal place of business in Birmingham, Alabama. (Master 1st Am. Class Action Compl. ¶ 49.)

Defendant SCI Georgia Funeral Services, Inc., is a Delaware corporation with its principal place of business in Atlanta, Georgia. (Master 1st Am. Class Action Compl. ¶ 50.)

Defendant SCI Tennessee Funeral Services, Inc. d/b/a Chattanooga Funeral Home–East Chapel, SCI Tennessee Funeral Services, Inc. d/b/a Chattanooga Funeral Home–North Chapel, SCI Tennessee Funeral Services, Inc. d/b/a Chattanooga Funeral Home–Valley View Chapel, Defendant SCI Tennessee Funeral Services, Inc. d/b/a Chattanooga Funeral Home–West Chapel, SCI Tennessee Funeral Services, Inc. d/b/a Fike Funeral Home, and SCI Tennessee Funeral Services, Inc. f/d/b/a Hooper Funeral Homes, Inc. is a Tennessee Corporation with its principal place of business in Cookeville, Tennessee. (Master 1st Am. Class Action Compl. ¶ 51.)

Defendant Sequatchie Valley Memorial Funeral Home & Gardens, Inc. is a Tennessee Corporation with its principal place of business in Kimball, Tennessee. (Master 1st Am. Class Action Compl. ¶ 52.)

Defendant Taylor Funeral Home of Chattanooga, Incorporated is a Tennessee Corporation with its principal place of business in Chattanooga, Tennessee. (Master 1st Am. Class Action Compl. ¶ 53.)

Defendant Thomas and Son Funeral Home, Inc. is a Georgia Corporation with its principal place of business in Calhoun, Georgia. (Master 1st Am. Class Action Compl. ¶ 54.)

Defendant Turner Funeral Home, Inc. is a Tennessee Corporation with its principal place of business in Chattanooga, Tennessee. (Master 1st Am. Class Action Compl. ¶ 55.)

Defendant Wallis–Wilbanks Funeral Home, LLC is a Georgia Limited Liability Company with its principal place of business in Lafayette, Georgia. (Master 1st Am. Class Action Compl. ¶ 56.)

Defendant Wann Funeral Home, Inc. is a Tennessee Corporation with its principal place of business in Chattanooga, Tennessee. (Master 1st Am. Class Action Compl. ¶ 57.)

Defendant Willis Funeral Home, Inc. is a Georgia Corporation with its principal place of business in Dalton, Georgia. (Master 1st Am. Class Action Compl. ¶ 58.)

Defendant Wilson Funeral Home Lafayette Chapel, LLC is a Georgia Limited Liability Company with its principal place of business in Lafayette, Georgia. (Master 1st Am. Class Action Compl. ¶ 59.)

Defendant Wilson Funeral Home J. Avery Bryan Chapel, LLC is a Georgia Limited Liability Company with its principal place of business in Chickamauga, Georgia. (Master 1st Am. Class Action Compl. ¶ 60.)

Defendant Wilson Funeral Home Wallis Stewart Chapel, LLC is a Georgia Limited Liability Company with its principal place of business in Ft. Oglethorpe, Georgia. (Master 1st Am. Class Action Compl. ¶ 61.)

Defendant W.L. Wilson & Sons, Inc. is a Georgia Corporation with its principal place of business in Ft. Oglethorpe, Georgia. (Master 1st Am. Class Action Compl. ¶ 62.)

## B. Factual Background

### 1. Facts Related to the Plaintiff Class

#### a. Discovery of Corpses in 2002

In February 2002, the Georgia Bureau of Investigation ("GBI") began an investigation

of the events surrounding the finding of human corpses on the property of Defendant Tri–State or on the property surrounding Defendant Tri–State. (Aff. of Kris Sperry, M.D. ¶ 4.) Kris Sperry, M.D., Chief Medical Examiner for the State of Georgia, served in this investigation in the role of identification of the human corpses found. (*Id.* ¶ 5.) Dr. Sperry determined that 339 human corpses or partial corpses were on the property of Defendant Tri–State or on the property surrounding Defendant Tri–State. (*Id.* ¶ 6.) As of Thursday, February 27, 2003, 222 of the 339 corpses found had been conclusively identified by the Georgia Emergency Management Agency ("GEMA"). (Gary W. McConnell—Director, GEMA, *Crematory Operations Update, Crematory Investigation Body Recovery Information,* GEMA Website (2003), at http://www2.state.ga.us/GEMA/.)

### b. Events Prior to 2002

Plaintiffs allege that:

for years Tri–State Crematory has failed to follow basic industry practices and acted in total disregard of human decency and the rights and feeling of the decedent's families by improperly cremating bodies, commingling the remains of the bodies in its custody, and fraudulently returning to families non-human materials such as concrete dust that were represented as being human remains.

(Master 1st Am. Class Action Compl. ¶ 2.) Plaintiffs have adduced evidence that is sufficient to support this allegation for purposes of the class certification issue.[4] (Aff. of Gretchen Edmiston ¶¶ 9–10; Aff. of Kerry Oliver ¶¶ 10–11; Aff. of James J. Jaconetti ¶¶ 9, 13; Aff. of Adolphus Mitchell ¶ 10.) Plaintiffs have not adduced any evidence indicating that the Tri–State Defendants returned non-human materials to families prior to 1988. (Pls.' Proposed Findings Fact & Conclusions Law at 21.)

Plaintiffs further allege that Funeral Home Defendants "failed to ensure that [cremations performed by Defendant Tri–State pursuant to contracts with Funeral Home

Defendants] were carried out in accordance with human dignity, and all applicable laws and regulations." (Master 1st Am. Class Action Compl. ¶ 3.) In support of this allegation, Plaintiffs produced evidence that Defendants' conduct fell below the standard of care for funeral service providers. (Dec. 16, 2002, Hr'g Tr. at 90, 92–97; Aff. of Donald E. Douthit ¶¶ 10–20.)

### 2. Facts Related to the Named Plaintiffs

#### a. Plaintiff Bechtel

Plaintiff Carol A. Bechtel is a resident of Idaho. (Master 1st Am. Class Action Compl. ¶ 4.) Plaintiff Bechtel's father, Robert Gladstone Swofford, died in April 1993, and Plaintiff Bechtel's mother, Willie Florence Swofford, died in April 1995. (*Id.* ¶¶ 89–90.) Plaintiff Bechtel contracted with Defendant W.L. Wilson & Sons for both funeral-related services. (Funeral Home Defs.' Br. Opposition Pls.' Renewed Mot. Class Certif. Ex. M.) In both cases, Defendant W.L. Wilson & Sons contracted with Defendant Tri–State to cremate the bodies. (Master 1st Am. Class Action Compl. ¶¶ 89, 90.) Defendant W.L. Wilson & Sons presented the cremated remains of Plaintiff Bechtel's father and mother in sealed boxes at their respective memorial services in April 1993 and May 1995. (Pl. Bechtel's Responses Funeral Home Defs.' 1st Master Interrogs. ("Bechtel's Interrog. Resps.") No. 17.) The cremated remains subsequently were buried at the Collegedale Cemetery. (*Id.*)

On approximately February 20, 2002, the cremated remains were exhumed, and Florence Evalynn Swofford Buttermore, Plaintiff Bechtel's sister, took possession of the cremated remains of her father and mother. (Bechtel's Interrog. Resps. Nos. 12, 17.) On the following day, Ms. Buttermore took the remains to the GEMA site for testing and inspection. (*Id.* No. 17.) Authorities at the GEMA site tested both cremated remains and found that the remains were human, but could not extract DNA from the

---

4. The Court duly notes that Funeral Home Defendants object to much of this evidence. The Court, however, has overruled, without preju-

dice, Funeral Home Defendants' objections at this stage of the litigation. (Order of Mar. 6, 2003.)

remains. (Bechtel's Interrog. Resps. Nos. 17, 18.)

Plaintiff Bechtel contends that she does not know whether the remains exhumed were the remains of her mother and father. (Bechtel's Interrog. Resps. No. 26.) Bechtel alleges that this uncertainty has caused her "much emotional distress." (*Id.*; *see also* Dep. of Carol Bechtel at 23, 125.)

### b. Plaintiff Yockel

Plaintiff Paula Yockel is a resident of Pennsylvania. (Master 1st Am. Class Action Compl. ¶ 5.) She asserts claims based on the handling of the remains of her father, Gilbert Schuchman. (*Id.* ¶ 88.) Plaintiff Yockel's father died on December 29, 1992. (*Id.*) According to Plaintiff Yockel, at the time of his death, Gilbert Schuchman was married to, but separated from, Doreen Cornett Schuchman. (Pl. Yockel's Resps. Funeral Home Defs.' 1st Master Interrogs. ("Yockel's Interrog. Resps.") No. 10.)[5]

At the time of his death, Mr. Shuchman was living with Doreen Willhite. (Aff. of Doreen Willhite ¶ 8.) Ms. Willhite had been living with Mr. Shuchman for eight years, and believes that she was Mr. Shuchman's common law wife. (*Id.* ¶ 10.) Ms. Willhite contracted with Defendant W.L. Wilson & Sons to handle the funeral arrangements for Mr. Schuchman. (Yockel's Interrog. Resps. Nos. 13, 16.) Defendant W.L. Wilson & Sons contracted with Defendant Tri–State to cremate Mr. Schuchman's remains. (Master 1st Am. Class Action Compl. ¶ 88.) Plaintiff Yockel contends that her grandfather, Anthony Schuchman, or Plaintiff Yockel and her grandfather, paid for the cremation. (Yockel's Interrog. Resps. No. 13; Dep. of Paula Yockel at 45.)

In January 1993, Plaintiff Yockel and her grandfather received, through the United States mail, what was represented to be the cremated remains of Mr. Schuchman. (Yockel's Interrog. Resps. No. 17.) Plaintiff Yockel's grandfather kept the remains at his home until June 1993, when the remains were buried in a cemetery plot. (*Id.*)

In March 2002, the remains were exhumed and tested by Pennsylvania coroner Cyril Wecht, M.D. (Yockel's Interrog. Resps. No. 17.) The coroner found that the ashes were human, but could not extract DNA from the remains. (*Id.* No. 18; Yockel Dep. at 59, 62.) Plaintiff Yockel has no proof that her father's remains were mishandled. (Yockel Dep. at 44.) As a result of her uncertainty as to whether the remains she received are her father's remains, Plaintiff Yockel claims that she has suffered "much emotional distress." (Yockel's Interrog. Resps. No. 26.)

### c. Plaintiff Webb

Plaintiff Naomi Webb is a resident of Florida. (Master 1st Am. Class Action Compl. ¶ 6.) Webb's daughter, Samantha Webb Swinney, died on August 31, 2000. (*Id.* ¶ 91.) At the time of her death, Ms. Swinney was married to Jason Swinney, a resident of Georgia. (Pl. Webb's Resps. Funeral Home Defs.' 1st Master Interrogs. ("Webb's Interrog. Resps.") No. 10.) Mr. Swinney signed all the documents with Defendant Buckner–Rush Funeral Home to handle the funeral arrangements for Ms. Swinney. (Dep. of Naomi Webb at 50–51, 53.) Plaintiff Webb and her husband paid the costs for the funeral arrangements. (*Id.* at 52.) Defendant Buckner–Rush contracted with Defendant Tri–State to cremate Ms. Swinney's remains. (Webb's Interrog. Resps. No. 14.)

Sometime later, at a date uncertain, Mr. Swinney picked up what were represented to be the cremated remains of Ms. Swinney from Defendant Buckner–Rush. (Webb's Interrog. Resps. No. 17.) Mr. Swinney spread those cremated remains in the ocean. (*Id.*)

After learning about the discovery of bodies at Tri–State, Plaintiff Webb gave a sample of her DNA and her daughter's medical and dental records to the Georgia Bureau of Investigation ("GBI"). (Webb Dep. at 69–72.) Ms. Swinney has not been identified as one of the bodies found on the Tri–State property. (*Id.* at 112–13.) Plaintiff Webb

---

**5.** The Court notes that Defendants vigorously contest Plaintiff Yockel's account of Mr. Schuch-man's marital status. The Court need not resolve that issue at this time.

has no evidence to suggest that the cremated remains received were not those of her daughter or that Defendant Buckner–Rush mishandled the cremated remains. (*Id.* at 99–105.) Plaintiff Webb states, however, that because of these events she has been depressed, but she has not received any treatment or counseling. (Pl. Webb's Interrog. Resps. No. 26.) Mr. Swinney, widower of Ms. Swinney, does not want to be part of this litigation. (Webb Dep. at 90.)

#### d. Plaintiff Conyers

Plaintiff Thomas G. Conyers is a resident of Ohio. (Master 1st Am. Class Action Compl. ¶ 7.) Plaintiff Conyers represents the proposed subclass of families whose decedents' uncremated remains were recovered from Defendant Tri–State's property. (*Id.* ¶ 66.) Plaintiff Conyers' father, Thomas J. Conyers, died on August 24, 2001. (*Id.* ¶ 92.)

Plaintiff Conyers contracted with Defendant Franklin–Strickland Funeral Home to handle the funeral arrangements for his father. (Funeral Home Defs.' Br. Opposition Pls.' Renewed Mot. Class Certif. Ex. M; Pl. Conyers' Resps. Funeral Home Defs.' 1st Master Interrogs. ("Conyers' Interrog. Resps.") No. 13.) Plaintiff Conyers understood that his father's body would be cremated at Defendant Tri–State. (Dep. of Thomas Conyers at 32.) Plaintiff Conyers testified he has no information that Defendant Franklin–Strickland mishandled his father's body prior to Defendant Franklin Strickland providing the body to Tri–State. (*Id.* at 102.)

In late February 2002, the GBI notified Plaintiff Conyers that his father's body had been identified as one of the bodies located on the property of Defendant Tri–State. (Conyers Dep. at 89.) In March 2002, Plaintiff Conyers requested that Heritage Funeral Home cremate the body that the GBI had identified as his father's body. (Conyers' Interrog. Resps. No. 18.) According to Plaintiff Conyers, these events have caused him emotional distress and renewed grief. (*Id.* No. 26.)

#### 3. Plaintiffs' Claims

Plaintiffs seek equitable relief and damages on behalf of the families of all decedents whose remains were consigned to Defendant Tri–State. (Master 1st Am. Class Action Compl. ¶ 3.) The suit alleges breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, fraudulent concealment, negligence, intentional mishandling of a corpse, negligent mishandling of a corpse, intentional infliction of emotional distress, negligent infliction of emotional distress, and unjust enrichment. *Id.*

### C. Procedural Background

On February 19, 2002, Plaintiff Eleanor Kitter Dent filed suit against the Tri–State Defendants in the Northern District of Georgia, Rome Division. (Dent Compl.) On February 26, 2002, Plaintiffs Carol A. Bechtel, Paula Yockel, and Anthony Schuchman filed a lawsuit against the Tri–State Defendants and numerous Funeral Home Defendants in the Northern District of Georgia, Rome Division. (Bechtel Compl.) On March 6, 2002, Plaintiffs Lorie Ann Walley, Carlton Dale Rice, Timothy Todd Rice, Damian Walley, and Virginia Rice Ellington filed suit in the Southern District of Alabama, Southern Division. (Walley Compl.)

On March 19, 2002, Plaintiffs in the *Bechtel* proceedings filed a Motion for Transfer and Coordination or Consolidation pursuant to 28 U.S.C.A. § 1407. On June 21, 2002, the Judicial Panel on Multidistrict Litigation issued a Transfer Order, transferring the *Dent, Bechtel,* and *Walley* actions to this Court for coordinated or consolidated pretrial proceedings. (June 21, 2002, Transfer Order.) On August 8, 2002, the Court held an Initial Conference for the consolidated proceedings. On August 16, 2002, the Court memorialized certain oral Orders issued at the Initial conference, including the appointment of lead and liaison counsel for Plaintiffs and Funeral Home Defendants and the identification of lead counsel for the Tri–State Defendants. (Order of Aug. 16, 2002.)

On September 27, 2002, Plaintiffs filed Plaintiffs' Master First Amended Class Action Complaint. In the Master First Amended Complaint, Plaintiffs identified Carol A. Bechtel, Paula Yockel, Naomi Webb, and

Thomas G. Conyers as the class representatives for the consolidated proceedings. (Master 1st Am. Class Action Compl. ¶¶ 4–7.) Plaintiffs also amended the list of named Defendants. (*Id.* ¶¶ 9–62.) On October 15, 2002, Defendants filed their Answers. (Answer by Defs. T. Ray Brent Marsh & Tri-State Crematory; Answer by Clara C. Marsh, Rhames L. Marsh & Tommy Ray Marsh; Answer by Funeral Home Defs.)

On October 15, 2002, Plaintiffs filed an Amended Motion to Certify Class Action. Plaintiffs seek to certify a class defined as:

All those who presently possess or who may subsequently acquire the right to control the disposition of the remains of any decedents delivered for cremation to Defendant Tri–State Crematory, Inc.; all persons who were parties to any contract with any of the defendants regarding funeral arrangements for a decedent who was delivered for cremation to Defendant Tri–State Crematory, Inc.; and the estates of the decedents and the representatives thereof; and a subclass defined as those families whose decedents' uncremated or otherwise desecrated remains have been recovered from the Tri–State Crematory property.

(Master 1st Am. Class Action Compl. ¶ 66.) Plaintiffs Bechtel, Yockel, and Webb will serve as named Plaintiffs for members of the proposed class, and Plaintiff Conyers will serve as a named Plaintiff for members of the proposed subclass. (*Id.*)

On December 16, 17, and 18, 2002, the Court conducted a class certification hearing. Having considered all of the extensive pre- and post-hearing briefing submitted by the parties, the Court now finds that the Amended Motion to Certify Class Action is ripe for resolution.

## II. Standing

■ " '[A]ny analysis of class certification must begin with the issue of standing.' " *Prado–Steiman v. Bush,* 221 F.3d 1266, 1279 (11th Cir.2000) (quoting *Griffin v. Dugger,* 823 F.2d 1476, 1482 (11th Cir.1987)). "[T]he 'constitutional threshold [of standing] must be met before any consideration of the typicality of claims or commonality of issues required for procedural reason by Fed. R.Civ.P. 23.' " *Prado–Steiman,* 221 F.3d at 1280 (alteration in original) (quoting *Brown v. Sibley,* 650 F.2d 760, 771 (5th Cir. Unit A, July 1981)). " 'Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others.' " *Id.* (quoting *Griffin,* 823 F.2d at 1482).

The Court therefore addresses individual, threshold standing in this Part of the Order, and then addresses the additional criteria of Rule 23 *infra* Parts III.-IV. Accordingly, the Court analyzes individual standing in two sub-parts: (A) the named Plaintiffs' standing to raise each claim; and (B) standing between the named Plaintiffs and each named Defendant.

### A. Named Plaintiffs' Standing to Raise Each Claim

#### 1. Standard for Determining Whether the Named Plaintiffs Have Standing in a Class Action

■ "Prior to certification of a class, and before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado–Steiman,* 221 F.3d at 1279. "It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert." *Id.* at 1280. "Rather, 'each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.' " *Id.* (quoting *Griffin,* 823 F.2d at 1483).

■ Subsequently, for each claim, to satisfy the standing requirements of Article III, at least one named Plaintiff:

[first,] must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not

conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quotation marks, ellipses, and citations omitted). In order to analyze whether an "invasion of a legally protected interest" has occurred, *see id.,* the Court must first resolve the question of what jurisdiction's law applies to Plaintiffs' claims, using the applicable choice of law rules.

### 2. Choice of Law

#### a. Choice of Law for Contract Claims

Funeral Home Defendants "contend that all fifty states' laws are going to become involved in this case." (Dec. 18, 2002, Hr'g Tr. at 54.) Funeral Home Defendants further argue that the overwhelming complexity of applying the law of many states to Plaintiffs' claims would overwhelm the Court and therefore strongly counsels against certifying a class. (*Id.* at 36–60.)

■ "A federal court faced with the choice of law issue must look for its resolution to the choice of law rules of the forum state." *Frank Briscoe Co., Inc. v. Ga. Sprinkler Co., Inc.,* 713 F.2d 1500, 1503 (11th Cir.1983) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Georgia, the forum state in this case, adheres to the traditional rule of *lex loci contractus* in cases involving conflicts of law. *Gen. Tel. Co. of Southeast v. Trimm,* 252 Ga. 95, 95, 311 S.E.2d 460, 461 (1984). "Under this approach, [contracts] are to be governed as to their nature, validity and interpretation by the law of the place where they were made, except where it appears from the contract itself that it is to be performed in a State other than that in which it

was made, in which case ... the laws of that sister State will be applied." *Trimm,* 252 Ga. at 95, 311 S.E.2d at 461 (alterations in original).

■ Georgia's choice of law system, however, has an unusual characteristic: "the application of another jurisdiction's laws is limited to statutes and decisions construing those statutes." *Frank Briscoe,* 713 F.2d at 1503 (citing *Budget Rent–A–Car Corp. v. Fein,* 342 F.2d 509 (5th Cir.1965) and *White v. Borders,* 104 Ga.App. 746, 123 S.E.2d 170 (1961)). "When no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law." *Id.* (citing *Budget Rent–A–Car,* 342 F.2d at 509; *Motz v. Alropa Corp.,* 192 Ga. 176, 15 S.E.2d 237 (1941); and *White,* 104 Ga.App. at 746, 123 S.E.2d at 170); *accord Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 725 n. 6 (11th Cir.1987) ("If a particular state does not have a controlling statute, however, the Georgia choice of law rule requires application of the common law as construed by the courts of Georgia."); *Briggs & Stratton Corp. v. Royal Globe Ins. Co.,* 64 F.Supp.2d 1340, 1343–44 (M.D.Ga.1999) (gathering post-*Frank Briscoe* cases from appellate courts of Georgia and concluding that rule from *Frank Briscoe* remains valid Georgia choice of law rule).

■ Although Plaintiffs' position on choice of law has not been a model of clarity over the course of this litigation, Plaintiffs now propose that the Court apply Georgia law to all Plaintiffs' claims. (Dec. 18, 2002, Hr'g Tr. at 130.) The Court, bound by case law from the Supreme Court of Georgia and the United States Court of Appeals for the Eleventh Circuit, finds that if no foreign statutes are "involved," then the Court must apply Georgia law, *Frank Briscoe,* 713 F.2d at 1503; *Motz,* 192 Ga. at 176, 15 S.E.2d at 238, unless the application of Georgia law would be inconsistent with due process, *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); *Kirkpatrick,* 827 F.2d at 725 n. 6.

■ Neither Plaintiffs, Funeral Home Defendants, nor the Tri–State Defendants have referred the Court to any statutes of

foreign States pertinent to Plaintiffs' claims for breach of contract.[6] The Court finds that the choice of law rules of the State of Georgia require the Court to apply Georgia law, unless such application is inconsistent with due process. The Court therefore now turns to the issue of due process.

 "[I]f Georgia law would require application of its own common law rules to some claims involving purchases in other states, the law of Georgia could be applied consistent with due process only if the particular transaction had some significant relation to Georgia." *Kirkpatrick*, 827 F.2d at 725 (citing *Phillips Petroleum Co.*, 472 U.S. at 797, 105 S.Ct. 2965 (1985)). The forum state "must have a 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [the forum state's] law is not arbitrary or unfair." *Phillips Petroleum Co.*, 472 U.S. at 821–22, 105 S.Ct. 2965 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312–13, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981)).

 Here, each contract for cremation entered into by a respective Funeral Home Defendant, regardless of the location or primary place of business of the respective Funeral Home Defendant, has one common element: at least a portion of the contract was to be performed in Georgia, at Tri-State Crematory. The Funeral Home Defendants' interactions with Tri-State Crematory create a significant aggregation of contacts with the State of Georgia. The Court concludes that

the contracts at issue have a significant relation with Georgia such that the choice of Georgia law is not arbitrary or unfair. The Court therefore will apply Georgia law in its analysis of Plaintiffs' claim for breach of contract.

### b. Choice of Law for Tort Claims

 The Court's choice of law analysis for Plaintiffs' tort claims is similar to the analysis discussed *supra* Part II.A.2.a. for Plaintiffs' contract claims. "A federal court faced with the choice of law issue must look for its resolution to the choice of law rules of the forum state." *Frank Briscoe*, 713 F.2d at 1503 (citing *Klaxon Co.*, 313 U.S. at 487, 61 S.Ct. 1020; and *Erie R.R.*, 304 U.S. at 64, 58 S.Ct. 817). The Georgia conflicts of law rule governing tort actions is *lex loci delecti*, or the place of the wrong. *Velten v. Lippert*, 985 F.2d 1515, 1521 (11th Cir.1993) (citing *Risdon Enters. v. Colemill Enters.*, 172 Ga. App. 902, 903, 324 S.E.2d 738, 740 (1984)). "The place of the wrong is the jurisdiction where the harm was suffered or where the last event necessary to make an actor liable for the alleged tort takes place." *Id.* (citing *Risdon*, 172 Ga.App. at 903, 324 S.E.2d at 740).

Again, however, in Georgia, "the application of another jurisdiction's laws is limited to statutes and decisions construing those statutes. When no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law." *Frank Briscoe*, 713 F.2d at 1503 (citations omitted).[7] The appellate courts of Georgia apply this choice of law limitation to

6. The Eleventh Circuit has stated that Georgia's choice of law rules require a trial court—rather than the parties—to survey the law of the relevant foreign states to determine whether those foreign states have a controlling statute before applying Georgia law. *Kirkpatrick*, 827 F.2d at 725 n. 6. The Eleventh Circuit further has indicated that if the trial court must survey the law of all fifty states, then class action treatment is rendered unmanageable. *Id.* at 725.

The Supreme Court of Georgia, however, stated in a subsequent decision that a Georgia trial court shall presume that the law of Georgia applies " 'where no statute of the foreign State is pleaded.' " *Avnet, Inc. v. Wyle Labs., Inc.*, 263 Ga. 615, 621, 437 S.E.2d 302, 306 (1993) (quoting *Slaton v. Hall*, 168 Ga. 710, 714, 148 S.E.

741 (1929)) (emphasis added). When a federal court in a diversity case is confronted with a conflict between a ruling by a federal court on an issue of state law, and a more recent decision by a state court on the same issue of state law, the federal court must follow the more recent state court decision. *Roboserve, Ltd. v. Tom's Foods, Inc.*, 940 F.2d 1441, 1451 (11th Cir.1991); *Briggs & Stratton Corp.*, 64 F.Supp.2d at 1343. The Court must follow the Georgia Supreme Court's decision in *Avnet*. Consequently, because the parties have not directed the Court's attention to statutes of foreign States in their pleadings, the Court presumes the law of the State of Georgia applies.

7. *See supra* Part II.A.2.a. for omitted citations and additional citations.

tort claims as well as to contract claims. *Slaton,* 168 Ga. at 710, 148 S.E. at 741 (applying rule in negligence case); *Risdon,* 172 Ga.App. at 905, 324 S.E.2d at 741 (stating rule in wrongful death case). Plaintiffs propose that the Court apply Georgia law to all Plaintiffs' claims. (Dec. 18, 2002, Hr'g Tr. at 130.) The Court agrees that, if the parties have not directed the Court's attention to statutes of foreign States, the Court must apply Georgia law, *Frank Briscoe,* 713 F.2d at 1503; *Motz,* 192 Ga. at 176, 15 S.E.2d at 238, unless the application of Georgia law would be inconsistent with due process, *Phillips Petroleum Co.,* 472 U.S. at 797, 105 S.Ct. 2965 (1985); *Kirkpatrick,* 827 F.2d at 725 n. 6. *See also* discussion *supra* note 1. With one exception, discussed *infra* Part II.A.2.c., the parties have not directed the Court's attention to controlling statutes of foreign states.[8]

■ For the following reasons, the Court finds that the application of Georgia law is not inconsistent with due process. The State of Georgia "must have a 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [Georgia] law is not arbitrary or unfair." *Phillips Petroleum Co.,* 472 U.S. at 821–22, 105 S.Ct. 2965 (quoting *Allstate Ins. Co.,* 449 U.S. at 312–13, 101 S.Ct. 633) (alterations added). Here, each of the torts alleged by the named Plaintiffs has a significant contact with the State of Georgia: namely, the alleged acts that occurred in Noble, Georgia, on Defen-

dant Tri–State's property, that led to this litigation. The Court consequently will apply Georgia law in analyzing Plaintiffs' tort claims.

### c. Controlling Statutes of Foreign States

Funeral Home Defendants have prepared a chart that shows the standards for recovery of punitive damages in twenty-four of the states where members of the proposed class reside. (Funeral Home Defs. Post–Hearing Br. Opposition to Pls. Mot. Certify Class Ex. A.) At least nineteen of those twenty-four states have statutes that control the award of punitive damages. (*Id.*) The statutes vary in legal standard for recovery of punitive damages.[9]

■ Thus, under Georgia's choice of law doctrine, the Court would be required to interpret, apply, and instruct a jury on the law of at least nineteen states in the area of punitive damages. The Court finds this task unmanageably complicated. *Accord In re Telectronics Pacing Sys.,* 172 F.R.D. 271, 294 (S.D.Ohio 1997). The Court therefore rules that punitive damages are not appropriate for class action certification in this case.

### d. Choice of Law for *Walley et al. v. Tri–State Crematory, Inc., et al.*

In Multi–District litigation, "the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint Implants*

---

**8.** Funeral Home Defendants do make reference to "different regulations regarding crematories which must be applied at different time periods and applicable in three different states, Georgia, Tennessee[,] and Alabama." (Funeral Home Defs.' Br. Opposition Pls.' Renewed Mot. Class Certif. at 74.) The Court has reviewed the statutes cited by Funeral Home Defendants and finds that those statutes are related to licensing of funeral establishments in Tennessee. The Court does not find that these statutes are controlling for any of Plaintiffs' claims evaluated *infra.*

**9.** For example, below are the relevant portions of the punitive damages statutes for the States of Mississippi and Alabama. The statutes show, *inter alia,* that Mississippi allows punitive damages to be awarded upon proof of grossly negli-

gent conduct, whereas Alabama requires a greater degree of culpability.

> Mississippi's punitive damages statute states: Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.

Miss.Code Ann. § 11–1–65(a) (2002).

> Alabama's punitive damages statute provides: Punitive damages may not be awarded in any civil action... other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff.

Ala.Code § 6–11–20(a) (1987).

*Prod. Liab. Litig.,* 97 F.3d 1050, 1055 (8th Cir.1996) (citing *In re Air Crash Disaster Near Chicago, Ill.,* 644 F.2d 594, 610 (7th Cir.1981) (holding transferee court must apply the "choice-of-law rules of the states where the actions were originally filed"), cert. denied, 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981)). The Court's choice of law analysis, *supra* Part II.A.2.a. & b., therefore only applies to cases in this consolidated action that were originally filed in Georgia.

The *Walley* case was originally filed in the United States District Court for the Southern District of Alabama.[10] The Court must therefore apply the choice of law rules for the State of Alabama to the *Walley* action. *Walley* is not a proposed class action. The case involves five Plaintiffs, who all are residents and citizens of Alabama. (*Walley* Compl. ¶¶ 1–5.) Those five Plaintiffs are suing Defendant Tri–State, Defendant T. Ray Brent Marsh, Defendant Covenant Funeral Services, Defendant Walter L. Crox, and Defendant Barbara Crox. (*Id.* ¶ 6–10.)

Defendant Tri–State is a Georgia corporation with its principal place of business in Noble, Georgia. (Master 1st Am. Class Action Compl. ¶ 9.) Defendant T. Ray Brent Marsh is a natural person who is a resident of Walker County, Georgia. (*Id.* ¶ 10.) Defendant T. Ray Brent Marsh is the operator and secretary of Defendant Tri–State. (*Id.*)

Defendant Covenant Funeral Service has its principal place of business in Chattanooga, Tennessee. (*Walley* Compl. ¶ 10.) Defendant Walter L. Crox is a citizen and resident of Tennessee, and co-owner and operator of Defendant Covenant Funeral Services. (*Id.* ¶ 8.) Defendant Barbara Crox is a citizen and resident of Tennessee, and co-owner and operator of Defendant Covenant Funeral Services. (*Id.*).

 The Alabama courts employ the traditional rules of *lex loci contractus* for contract claims, *Am. Nonwovens, Inc. v. Non Wovens Eng'g, S.R.L.,* 648 So.2d 565, 567 (Ala.1994), and *lex loci delecti* for tort claims, *Fitts v. Minnesota Min. & Mfg. Co.,* 581

So.2d 819, 823 (Ala.1991). Although the Court has not performed a rigorous choice of law analysis for the *Walley* claims, the Court believes that use of Alabama's choice of law rules will probably result in the application of Alabama or Tennessee law to the *Walley* Plaintiffs' claims. The Court will nevertheless allow the *Walley* claims to remain a part of these consolidated proceedings through the completion of discovery. If the *Walley* litigation proceeds to trial, or if parties to the *Walley* litigation wish to file dispositive motions with respect to the *Walley* claims, the Court will promptly take measures to ensure that the Judicial Panel on Multidistrict Litigation remands the *Walley* case back to the Southern District of Alabama. 28 U.S.C.A. 1407(a).

### 3. Evidentiary Standard to Establish Standing at Class Certification Stage

 "The amount of proof required to establish standing varies depending on the stage of the litigation at which the standing issue arises." *In re Polypropylene Carpet Antitrust Litig.,* 178 F.R.D. 603, 609 (N.D.Ga.1997) (citing *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130). "At the motion to dismiss stage, the party seeking standing may rely on the facts alleged in the complaint, whereas at the summary judgment stage, the party must adduce evidence sufficient to create a question of fact on the standing issue." *Id.* (citing *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130.) "The class certification stage is a hybrid of these two stages, in that the court looks beyond the pleadings but does not inquire into the merits of the case." *Id.* (citing *General Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

"The Court therefore will examine the evidence necessary to resolve the standing issue, viewing the evidence in a light most favorable to Plaintiffs." *In re Polypropylene Carpet,* 178 F.R.D. at 609. Using this evidentiary standard, the Court will evaluate each of Plaintiffs' claims to determine wheth-

---

**10.** The *Bechtel* and *Dent* cases were both filed in the United States District Court for the Northern District of Georgia.

er " 'at least one named plaintiff has suffered the injury that gives rise to that claim.' " *Prado–Steiman,* 221 F.3d at 1280 (quoting *Griffin,* 823 F.2d at 1483).

### 4. Analysis of Standing for Each Claim

#### a. Equitable Claim (Injunctive/Declaratory Relief)

▆▆▆▆▆▆ "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney v. Fed. Collection Deposit Group,* 193 F.3d 1342, 1346 (11th Cir.1999) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). Plaintiffs may only seek injunctive relief against future conduct by Defendants if Plaintiffs allege " 'a real and immediate-as opposed to a merely conjectural or hypothetical-threat of future injury.' " *Shotz v. Cates,* 256 F.3d 1077, 1081 (11th Cir.2001) (quoting *Wooden v. Bd. of Regents of Univ. Sys. of Ga.,* 247 F.3d 1262, 1284 (11th Cir.2001)).

▆▆▆▆▆▆ Further, to seek injunctive relief, "a substantial continuing controversy between two adverse parties" must exist. *Malowney,* 193 F.3d at 1347 (citing *Emory v. Peeler,* 756 F.2d 1547, 1552 (11th Cir.1985)). " 'The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred.' " *Id.* (quoting *Emory,* 756 F.2d at 1552). Finally, "[t]he emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant." *Lyons,* 461 U.S. 95, 107 n. 8, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

▆▆▆▆ Aside from Plaintiffs' breach of contract claims, the injury alleged by Plaintiffs Bechtel, Yockel, and Webb is the "uncertainty" related to the disposition of their loved ones' remains. (Dec. 18, 2002, Hr'g Tr. at 138.) The injury alleged by Plaintiff Conyers relates to the identification of his father as one of the bodies discovered at Tri-State Crematories in 2002. (*Id.* at 30.) Nei-

ther Plaintiff Bechtel, Plaintiff Yockel, Plaintiff Webb, nor Plaintiff Conyers have alleged facts that indicate that any "real and immediate" "threat of future injury" exists. *See Wooden,* 247 F.3d at 1284.

Nor have Plaintiffs alleged the existence of a continuing controversy between the named Plaintiffs and any Defendant for which injunctive or declaratory relief would prevent further injury. The Court finds that all of the named Plaintiffs lack standing to seek "forward-looking relief" and that the named Plaintiffs therefore "cannot represent a class seeking that relief." *See Wooden,* 247 F.3d at 1288. The Court consequently dismisses without prejudice Plaintiffs' claims for equitable relief.

#### b. Breach of Contract

▆▆▆▆ In order to maintain a suit on a contract, privity of contract must exist between parties to the contract. *Sofet v. Roberts,* 185 Ga.App. 451, 452, 364 S.E.2d 595, 596 (1987) (citing *Stein Steel & Supply Co. v. Goode Constr. Co.,* 83 Ga.App. 821, 822, 65 S.E.2d 183 (1951)). Plaintiffs have adduced evidence that Plaintiff Conyers was a party to a contract for funeral services with a Funeral Home Defendant. (Funeral Home Defendants' Br. Opposition Pls.' Renewed Mot. Class Certif. Ex. M.) Plaintiffs have also produced evidence that Plaintiff Bechtel was a party to a contract for funeral services with a Funeral Home Defendant. (*Id.*)

▆▆▆▆▆▆ Funeral Home Defendants, however, have argued that Plaintiff Bechtel's breach of contract claim is barred by the expiration of the applicable period of limitation. "All actions upon promissory notes, drafts, or other simple contracts in writing shall be brought within six years after the same become due and payable." O.C.G.A. § 9–3–24. " 'Under Georgia law, the statute of limitations runs from the time the contract is broken and not at the time the actual damage results or is ascertained.' " *Owen v. Mobley Const. Co., Inc.,* 171 Ga.App. 462, 462, 320 S.E.2d 255, 256 (1984) (quoting *Space Leasing Assoc. v. Atlantic Bldg. Systems,* 144 Ga.App. 320, 241 S.E.2d 438 (1977)) (internal citations omitted); *accord Moore v.*

*Dept. of Human Resources,* 220 Ga.App. 471, 472, 469 S.E.2d 511, 512–13 (1996). "The discovery rule is not applicable to a cause of action based on breach of contract." *Id.* (citing *Owen,* 171 Ga.App. at 462, 320 S.E.2d at 255).

 Plaintiff Bechtel's pre-need contract for cremation services for Willie Florence Swofford was executed in May 1994. (Funeral Home Defendants' Br. Opposition Pls.' Renewed Mot. Class Certif. Ex. M.) Ms. Swofford died on April 30, 1995. (*Id.*) Any alleged breach of the contract for cremation services therefore occurred in 1995. The expiration of the statute of limitations consequently took place in 2001. Because this lawsuit was not filed until 2002, Plaintiff Bechtel's breach of contract claim is time barred.[11]

The Court concludes, however, that Plaintiff Conyers has met the requirements for standing for Plaintiffs' breach of contract claim. Plaintiffs therefore may assert their breach of contract claim on behalf of the class.

### c. Breach of the Covenant of Good Faith and Fair Dealing

During the Class Certification Hearing, counsel for Plaintiffs informed the Court that Plaintiffs were not pursuing a claim for breach of the covenant of good faith and fair dealing. (Dec. 18, 2002, Hr'g Tr. at 146.)

The Court therefore dismisses this claim, and will not consider it further.

### d. Breach of Fiduciary Duty or Special Duty

#### (1) Breach of Fiduciary Duty

To establish standing for this claim, Plaintiffs must show the existence of a fiduciary relationship between Funeral Home Defendants and Plaintiffs. Plaintiffs have not cited any Georgia case or statute recognizing the existence of a fiduciary duty between a funeral home and those seeking funeral arrangements for their loved one. (Dec. 18, 2002, Hr'g Tr. at 142.) The Court's own research also has not uncovered the existence of such an explicit fiduciary duty.

 Plaintiffs argue, however, that the relationship between Funeral Home Defendants and Plaintiffs is governed by O.C.G.A. § 23–2–58, and therefore should be deemed a fiduciary relationship.[12] That statute provides:

> 23–2–58 Confidential relations defined. Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith,

**11.** Plaintiffs argue that the statute of limitations should be tolled for fraudulent concealment. (Pls.' Reply Mem. Supp. Class Certification at 61–63.) Under O.C.G.A. § 9–3–96, the statute of limitations applicable to a plaintiff's claim my be tolled if the plaintiff can show " '(1) actual fraud on the part of the defendant involving moral turpitude, (2) which conceals the existence of the cause of action from the plaintiff, and (3) plaintiff's reasonable diligence in discovering his cause of action, despite his failure to do so within the time of the applicable statute of limitations.' " *Gropper v. STO Corp.,* 250 Ga.App. 820, 824, 552 S.E.2d 118, 123 (2001) (quoting *McClung Surveying v. Worl,* 247 Ga.App. 322, 324, 541 S.E.2d 703 (2000)) (citations omitted).

The Court does not agree with Plaintiffs. First, Plaintiffs have not alleged "actual fraud" involving "moral turpitude" on the part of Funeral Home Defendants, as required by Georgia appellate decisions, *see Gropper,* 250 Ga.App. at 824, 552 S.E.2d at 123; instead, Plaintiffs allege

that Funeral Home Defendants were "negligently complicit in, and vicariously liable for, the fraudulent concealment by the Tri–State [D]efendants." (Master 1st Am. Class Action Compl. ¶ 124; Pls.' Reply Mem. Supp. Class Certification at 62.) Second, with respect to allegations of fraud on the part of the Tri–State Defendants, the Court concludes that those allegations fail to satisfy the predominance requirement of Rule 23(b)(3). *See infra* Part IV.B.1.b. (discussing lack of predominance of common issues over individual issues for Plaintiffs' claim of fraud against the Tri–State Defendants).

**12.** The Georgia Court of Appeals has indicated that it considers the terms "fiduciary relationship" and "confidential relationship" to be synonymous. *Bowen v. Hunter, Maclean, Exley & Dunn,* 241 Ga.App. 204, 207, 525 S.E.2d 744, 748 (1999).

such as the relationship between partners, principal and agent, etc. O.C.G.A. § 23–2–58.

 The Court does not agree with Plaintiffs that the relationship between Plaintiffs and Funeral Home Defendants is a fiduciary relationship or a confidential relationship as defined by O.C.G.A. § 23–2–58. While it is true that persons seeking funeral services necessarily must trust and have confidence in the funeral homes they choose, "[t]he mere fact that one reposes great trust and confidence in another does not serve to create a confidential relationship." *Walsh v. Campbell,* 130 Ga.App. 194, 199, 202 S.E.2d 657, 662–62 (1973) (citing *Dover v. Burns,* 186 Ga. 19, 196 S.E. 785 (1938)). Further, although the first codification of O.C.G.A. § 23–2–58 occurred in 1863, the Court has found no Georgia decision citing that statute in the context of funeral home duties. The Court therefore finds that Georgia law does not recognize a fiduciary duty between funeral homes and persons contracting for the services of funeral homes. Plaintiffs consequently lack standing to pursue a claim for breach of fiduciary duty.

### (2) Breach of Special Duty

The Court is uncertain whether Plaintiffs consider their claim for breach of special duty as a separate claim, or whether Plaintiffs use the phrase "special duty" simply as another term for fiduciary duty. Out of an abundance of caution, the Court will briefly consider Plaintiffs' claim for breach of special duty as a separate claim.

To demonstrate standing for breach of special duty, Plaintiffs must first establish the existence of a special duty that the Funeral Home Defendants owe Plaintiffs. Plaintiffs have not cited any Georgia case or statute recognizing the existence of a "special duty" between a funeral home and those contract-

ing for funeral arrangements for their loved one. (Dec. 18, 2002, Hr'g Tr. at 142.) The Court's own research also has not uncovered the existence of such an explicit "special duty" in this context.[13] The Court finds that Georgia does not recognize the existence of a special duty owed by funeral homes to those contracting for their services. Plaintiffs therefore lack standing to pursue a claim for breach of special duty.

### (3) Summary

The Court concludes that Georgia law does not recognize a fiduciary, or special, duty owed by funeral homes to those with whom the funeral home contracts. The Court therefore finds that Plaintiffs have no standing to bring claims based on breach of those duties, and those claims are dismissed.

### e. Fraudulent Conduct as to the Tri–State Defendants[14]

 To bring a fraud action, Plaintiffs must demonstrate that Plaintiffs' injuries are the proximate result of false representations that were made by the Tri–State Defendants, were known by the Tri–State Defendants to be false, and were made by the Tri–State Defendants with the intention of deceiving the Plaintiffs. *Martin Burks Chevrolet v. McMichen,* 136 Ga.App. 845, 847, 222 S.E.2d 633, 635 (1975). Privity between Plaintiffs and the Tri–State Defendants is not required. *Ramey v. Leisure, Ltd.,* 205 Ga.App. 128, 130–31, 421 S.E.2d 555, 558 (1992).

 Plaintiffs have adduced evidence that Plaintiff Conyers was given cremation remains that were represented to be the cremation remains of his father, and that the remains of his father later were discovered at Defendant Tri–State Crematory. (Conyers Dep. at 34, 39–41.) The Court finds this evidence is sufficient to demonstrate the type

---

**13.** The Court notes however, that, under Georgia law, "the duty of ordinary care" is a relative term. *See, e.g., Lunsford v. Childs,* 107 Ga.App. 210, 212, 129 S.E.2d 398, 400 (1963) ("Ordinary care ... requires the exercise of due care under the circumstances, which involves a degree of caution commensurate with the danger involved."). *See also infra* Part III.A.4.f. (addressing Plaintiffs' negligence claim).

**14.** Plaintiffs are not pursuing a fraud claim against the Funeral Home Defendants. (Master 1st Am. Class Action Compl. ¶ 126; Dec. 18, 2002, Hr'g Tr. at 145.) The Court therefore will only consider Plaintiffs' fraud claim as it pertains to the Tri–State Defendants.

of injury contemplated by the Georgia courts for a claim of fraud. Plaintiffs therefore possess standing to assert a fraud claim as to the Tri State Defendants on behalf of the class.

### f. Negligence

██ A negligence claim may only be brought by a person who has suffered an injury caused by another who owes a legal duty to the first person. *Wilson v. Mallard Creek Holdings,* 238 Ga.App. 746, 747, 519 S.E.2d 925, 926 (1999). Plaintiffs have alleged the existence of facts that may state two types of negligence claims: (1) a negligence claim based on the existence of a contract; and (2) a negligence claim based on interference with the right to burial.

### (1) Existence of a Contract

██ The existence of a contract between parties may give rise to a legal duty actionable in tort. O.C.G.A. § 51–1–8. As stated *supra* Part III.A.4.b., Plaintiffs have produced evidence that Plaintiff Conyers and Plaintiff Bechtel were parties to contracts with Funeral Home Defendants. Plaintiff Conyers and Plaintiff Bechtel therefore have standing to assert claims for negligence on behalf of absent class members based on the existence of a contract.

### (2) Interference with Right to Burial

██ Further, the Georgia appellate courts recognize a legal interest in the deceased body of a relative. *Welch v. Welch,* 269 Ga. 742, 743, 505 S.E.2d 470 (1998); *Louisville & Nashville R.R. Co. v. Wilson,* 123 Ga. 62, 51 S.E. 24 (1905). The legal interest belongs to the husband or wife of the deceased, and, if neither are alive, to the next of kin. *Welch,* 269 Ga. at 743, 505 S.E.2d at 470; *Wilson,* 123 Ga. at 62, 51 S.E. at 24. Interference with this right, specifically interference with the right of burial or disposition of the deceased, is a tort. *See, e.g., Wilson,* 123 Ga. at 62, 51 S.E. at 24; *Pyle v. Pyle,* 243 Ga.App. 398, 400, 531 S.E.2d 738, 740 (2000).

██ Plaintiffs have adduced evidence that Plaintiff Yockel is the next of kin of decedent Gilbert Schuchman. (Yockel Dep. at 23, 25–26.) Plaintiffs have also adduced evidence that Plaintiff Bechtel, along with her siblings, is the next of kin of decedents Robert Gladstone Swofford and Willie Florence Swofford. (Bechtel Dep. at 12–13, 27–28, 31.) Plaintiff Yockel and Plaintiff Bechtel therefore have standing to assert claims for interference with the right of burial.

### (3) Summary

For the reasons given above, the Court concludes that Plaintiff Conyers, Plaintiff Bechtel, and Plaintiff Yockel each have standing to assert a claim for negligence. Therefore, Plaintiffs may assert their negligence claim on behalf of the class.

### g. Willful Interference with Remains and Intentional Mishandling of a Corpse

For the reasons given *supra* Part III. A.4.f.(2), the Court concludes that Plaintiffs have standing to assert claims for willful interference with remains and intentional mishandling of a corpse.

### h. Negligent Interference with Remains and Mishandling of a Corpse

Likewise, for the reasons given *supra* Part III.A.4.f.(2), the Court concludes that Plaintiffs have standing to assert claims for negligent interference with remains and mishandling of a corpse.

### i. Intentional Infliction of Emotional Distress

██ To pursue a claim for intentional infliction of emotional distress under Georgia law, Plaintiffs must allege that Plaintiffs were injured by some "malicious, wilful or wanton" conduct " 'directed toward the plaintiff.' " *Hall v. Carney,* 236 Ga.App. 172, 174, 511 S.E.2d 271, 274 (1999) (quoting *Ryckeley v. Callaway,* 261 Ga. 828, 829, 412 S.E.2d 826, 826 (1992)). To show wilful or wanton conduct, Plaintiffs must demonstrate that Funeral Home Defendants' behavior, or the Tri–State Defendants' behavior, evidenced a

wilful intention to inflict Plaintiffs' injury, or a reckless disregard for the rights of Plaintiffs equivalent to an intentional violation of them. *Jacobus v. Congregation of the Children of Israel,* 107 Ga. 518, 33 S.E. 853, 855 (1899); *Pyle v. Pyle,* 243 Ga.App. 398, 400, 531 S.E.2d 738, 740 (2000); *McNeal Loftis, Inc. v. Helmey,* 218 Ga.App. 628, 629, 462 S.E.2d 789, 790 (1995).

█ Plaintiffs have adduced evidence that Plaintiff Conyers was given cremation remains that were represented to be the cremation remains of his father, and that the remains of Plaintiff Conyers' father later were discovered at Tri–State Crematory. (Conyers Dep. at 34, 39–41.) The Court finds that this evidence is sufficient to demonstrate the type of injury contemplated by the Georgia courts for a claim of intentional infliction of emotional distress. Plaintiffs thus have standing to assert this claim on behalf of the class.

### j. Negligent Infliction of Emotional Distress

█ Pursuant to Georgia law, to pursue a claim for negligent infliction of emotional distress, Plaintiffs must allege "some impact on the plaintiff, and that impact must be a physical injury." *Ryckeley,* 261 Ga. at 828, 412 S.E.2d at 826 (citing *OB–GYN Assoc. v. Littleton,* 259 Ga. 663, 386 S.E.2d 146 (1989)). Plaintiffs have not alleged any impact that has led to physical injury. The Court therefore concludes that Plaintiffs do not have standing to bring a claim for negligent infliction of emotional distress, and dismisses that claim.

### k. Unjust Enrichment

During the Class Certification Hearing, counsel for Plaintiffs informed the Court that Plaintiffs were not going to pursue a claim for unjust enrichment. (Dec. 18, 2002, Hr'g Tr. at 147.) The Court therefore will not consider this claim, and dismisses it.

### 5. Summary of Named Plaintiffs' Standing to Raise Each Claim

In sum, the Court concludes that the named Plaintiffs have standing to assert claims on behalf of the class for: (1) breach of contract; (2) fraudulent conduct as to the Tri–State Defendants; (3) negligence; (4) willful interference with remains and intentional mishandling of a corpse; (5) negligent interference with remains and mishandling of a corpse; and (6) intentional infliction of emotional distress. The Court now turns to the issue of whether the named Plaintiffs have standing to sue each named Defendant.

### B. Standing Between Named Plaintiffs and Each Named Defendant

█ Funeral Home Defendants have correctly pointed out to the Court that the four named Plaintiffs were engaged in funeral arrangements with only three of the Funeral Home Defendants, but Plaintiffs have brought this suit against approximately fifty-six funeral home entities. (Funeral Home Defs.' Br. Opposition Pls.' Renewed Mot. Class Certif. at 24; Master 1st Am. Class Action Compl. ¶¶ 15–62, 88–92.) The named Plaintiffs appear to have no cause of action against the Funeral Home Defendants with which they did not do business. The Court must consider, however, two procedural devices that may allow Plaintiffs to state a claim against Funeral Home Defendants, even those Funeral Home Defendants with which Plaintiffs have not had contact: (1) whether juridical relations exist between all Defendants such that a single resolution of the issues would be expeditious; or (2) whether joinder of all Defendants under Rule 20 of the Federal Rules of Civil Procedure is appropriate. The Court now turns to an examination of those procedural devices.

### 1. Juridical Relations

█ The court in *La Mar v. H & B Novelty & Loan Co.,* 489 F.2d 461 (9th Cir. 1973), provided a framework for analyzing the instant situation, where every named Plaintiff has not suffered an injury at the hands of every Defendant. The court first stated:

> a plaintiff who has no cause of action against the defendant can not 'fairly and adequately protect the interests' of those who do have such causes of action. This is true even though the plaintiff may have

suffered an identical injury at the hands of a party other than the defendant and even though his attorney is excellent in every material respect.

*La Mar*, 489 F.2d at 466. The *La Mar* court then went on to describe two exceptions to this rule:

Obviously this position does not embrace situations in which all injuries are the result of a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury. Nor is it intended to apply in instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious.

*La Mar*, 489 F.2d at 466 (footnotes omitted).

The Eleventh Circuit has not explicitly endorsed the *La Mar* framework, but has discussed it favorably in *dicta*. *Moore v. Comfed Sav. Bank*, 908 F.2d 834, 838 (11th Cir. 1990).[15] Plaintiffs have not alleged the existence of a "conspiracy or concerted scheme;" therefore, the Court confines its discussion of *La Mar* and *Moore* to whether all Defendants are "juridically related [or 'linked'] in a manner that suggests a single resolution of the dispute would be expeditious." *Moore*, 908 F.2d at 838; *La Mar*, 489 F.2d at 466.

■ "A juridical link has been defined as a 'legal relationship' which sufficiently relates all the defendants so that a single action is preferable." *Turpeau v. Fid. Fin. Servs., Inc.*, 936 F.Supp. 975, 978 (N.D.Ga.1996), *aff'd*, 112 F.3d 1173 (11th Cir.1997) (quoting *Thillens, Inc. v. Cmty. Currency Exch. Ass'n*, 97 F.R.D. 668, 676 (N.D.Ill.1983)); *accord La Mar*, 489 F.2d at 470. "Juridical links are most often found in cases involving a defendant class whose members are 'officials of a single state [who] are charged with enforcing or uniformly acting in accordance with a state statute, or common rule or practice of a state-wide application, which is alleged to be unconstitutional.'" *Turpeau*, 936 F.Supp. at 978 (quoting *Mudd v. Busse*, 68 F.R.D. 522, 527–28 (N.D.Ind.1975), *aff'd*, 582 F.2d 1283 (7th Cir.1978), *cert. denied*, 439

U.S. 1078, 99 S.Ct. 858, 59 L.Ed.2d 47 (1979)); *accord La Mar*, 489 F.2d at 470; *Doss v. Long*, 93 F.R.D. 112, 120 (N.D.Ga. 1981).

Federal courts have also found juridical links in a variety of other contexts. *See, e.g., Bromley v. Mich. Educ. Ass'n–NEA*, 178 F.R.D. 148, 163 (E.D.Mich.1998) (juridical link found where all defendants had some union affiliation); *Heffler v. United States Fid. & Guar. Ins. Co.*, 1992 WL 50095, at *4 (E.D.Pa. Mar.10, 1992) (common form provided by industry trade group was valid juridical link); *Barker v. FSC Secs. Corp.*, 133 F.R.D. 548, 553 (W.D.Ark.1989) (common corporate ownership was valid juridical link); *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 681 (N.D.Cal.1986) (defendant underwriters were found to be juridically linked because defendants entered into agreement among themselves concerning relevant underwriting and were thereby bound to common course of conduct); *United States v. Trucking Emp., Inc.* 75 F.R.D. 682, 689 (D.D.C.1977) (juridical link found where "each member of the defendant class provides an identical service, requires employees who possess identical skills, and utilizes identical job classifications").

■ However, "[n]o juridical link can be said to exist between unrelated businesses simply because they engage in similar conduct." *Canady v. Allstate Ins. Co.*, 1997 WL 33384270, at *6 (W.D.Mo. June 19, 1997) (citing *La Mar*, 489 F.2d at 470). "A juridical link sufficient to justify class certification generally must stem from an independent legal relationship." *Id.; see also Angel Music, Inc. v. ABC Sports, Inc.*, 112 F.R.D. 70, 75 (S.D.N.Y.1986) (the "juridical link" exception is limited to cases where the defendants' conduct "is standardized by a common link to an agreement, contract or enforced system which acts to standardize the factual underpinnings of the claims and to insure the assertion of defenses common to the class.") Those latter cases seem in line with the limited available Eleventh Circuit jurispru-

---

15. The Ninth Circuit opinion discussed juridical links in the context of a Rule 23 typicality analysis, *La Mar*, 489 F.2d at 465–68, whereas the Eleventh Circuit decision addressed juridical

links under the rubric of standing, *Moore*, 908 F.2d at 837–39. This Court will follow the analytical structure used by the Eleventh Circuit.

dence related to juridical links in contexts outside of state officials being charged with unconstitutional conduct. *Moore*, 908 F.2d at 838 ("While all of these cases [cited by plaintiffs] support plaintiffs' view that in the event there is a juridical link, it is appropriate to join as a defendant a party with whom the named class representative did not have a direct contact, each of them presents a situation in which there was either a contractual obligation among all defendants or a state or local statute requiring common action by the defendants."); *Turpeau*, 936 F.Supp. at 978–79 (no juridical link among defendant lenders and life insurance companies although each allegedly violated same state statute in same manner; defendants were not state officials charged with enforcing state statute or common rule or practice).

Even accepting Plaintiffs' allegations as true, the Court finds that Funeral Home Defendants were simply unrelated, parallel businesses that engaged in the similar conduct of doing business with Defendant Tri–State. While it is true that each Funeral Home Defendant engaged in contractual relations with Defendant Tri–State, here, as in *Moore*, no "contractual relation among all defendants" exists so as to support a finding of juridical links between Defendants in this case. 908 F.2d at 838. Plaintiffs therefore may not proceed against all Defendants under this theory.

## 2. Permissive Joinder

Having found no juridical relations between all Defendants, the Court now considers whether joinder of Defendants is appropriate under the provisions of the Federal Rules. Rule 20(a) provides in relevant part:

(a) *Permissive Joinder.* All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded.

Fed. R. Civ. Proc. 20(a). In *Moore*, the Eleventh Circuit held that ample basis existed for the district court to join defendants under Rule 20(a). 908 F.2d at 839.

The facts in *Moore* were as follows: plaintiffs borrowed money at allegedly usurious rates from a lender. 908 F.2d at 836. One of the several named defendants purchased from the lender, on the secondary market, the notes and contracts of each of the named plaintiffs. *Id.* at 837. After the lender filed bankruptcy, the named plaintiffs brought a class action against the specific financial institutions that held the named plaintiffs' notes and contracts. *Id.* Plaintiffs sought to represent all persons who had borrowed money from the lender. *Id.* The district court *sua sponte* joined as defendants other financial institutions that had purchased notes and contracts from the lender. *Id.* at 836. All of the newly joined defendants that did not hold any note or contract signed by any of the named class plaintiffs complained that they had been improperly joined. *Id.* at 837.

The Eleventh Circuit discussed the juridical link doctrine, but did not expressly rule on that doctrine. 908 F.2d at 838. Rather, the court found that defendants were properly joined pursuant to Federal Rule of Civil Procedure 20(a). *Id.* at 839. The court reasoned that joinder was appropriate because all of the plaintiff class's claims "arose out of a series of transactions or occurrences initiated by [the lender] and that all of the claims involved the same question of law or fact." *Id.*

Similarly, in the instant case, all of Plaintiffs' claims arose out of a series of transactions or occurrences that have a question of law or fact common to all Defendants. The series of transactions that have a common question of law or fact is the series of contracts between Plaintiffs and Funeral Home Defendants that were to be performed in part by a common entity, Defendant Tri–State. The series of occurrences that have a common question of law or fact are the alleged events at a common locale, Defendant Tri–State's property, involving mishandling of Plaintiffs' decedents' remains.

Plaintiffs' claims all arose out of a series of transactions and occurrences involving a common entity, Defendant Tri-State, just as the claims in *Moore* all arose out of a series of transactions and occurrences involving a common entity, the lender. *Moore,* 908 F.2d at 834. The Court finds that the argument for joinder of Funeral Home Defendants here is even more persuasive than the argument for joinder of the financial institutions in *Moore,* because the plaintiffs in *Moore* had no direct contact with the financial institution, whereas here Plaintiffs dealt directly with Funeral Home Defendants.

For these reasons, the Court finds that joinder of all Funeral Home Defendants is proper under Federal Rule of Civil Procedure 20(a). The Court therefore concludes that the named Plaintiffs have standing to sue all named Defendants.

## C. Summary: Standing

In summary, the Court concludes that the named Plaintiffs have standing to bring claims on behalf of the class members for: (1) breach of contract; (2) fraudulent conduct as to the Tri-State Defendants; (3) negligence; (4) willful interference with remains and intentional mishandling of a corpse; (5) negligent interference with remains and mishandling of a corpse; and (6) intentional infliction of emotional distress. The Court further concludes that the named Plaintiffs have standing to sue all named Defendants, including both Funeral Home Defendants and the Tri-State Defendants.

## III. Standard for Class Certification

■■■ A request to proceed as a class action is governed by Federal Rule of Civil Procedure 23. Plaintiffs have the burden of establishing that they have satisfied each of Rule 23's certification requirements. *See In re Domestic Air Transp. Antitrust Litig.,* 137 F.R.D. 677, 683 (N.D.Ga.1991). When assessing a motion for class certification, the Court does not inquire whether Plaintiffs have adduced sufficient evidence to prevail on the merits of their claims. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Hudson v. Delta Air Lines, Inc.,* 90 F.3d 451, 456 (11th

Cir.1996), *cert. denied,* 519 U.S. 1149, 117 S.Ct. 1082, 137 L.Ed.2d 217 (1997). Nonetheless, the Court performs a "rigorous analysis" of the arguments offered in support of certifying the class. *Gilchrist v. Bolger,* 733 F.2d 1551, 1556 (11th Cir.1984). When performing this analysis, the Court is not limited solely to the substance of the parties' pleadings; indeed, the Court should allow—and has allowed in this case—the parties to conduct discovery and adduce evidence relevant to the class certification issue. *See Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566, 1570–71 (11th Cir.1992). As pointed out by the Supreme Court, the need for such discovery varies depending on the circumstances presented by each case:

> The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action. [*Coopers & Lybrand v. Livesay,* 437 U.S. 463] at 469[, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)] (quoting *Mercantile Nat. Bank v. Langdeau,* 371 U.S. 555, 558, 83 S.Ct. 520, 9 L.Ed.2d 523). Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.

*Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Hudson,* 90 F.3d at 457.

Consistent with Eleventh Circuit authority, the Court will "scrutinize the evidence plaintiffs propose to use in proving their claims without unnecessarily reaching the merits of the underlying claims." *Domestic Air,* 137 F.R.D. at 684; *Telecomm Technical Serv., Inc. v. Siemens Rolm Communications, Inc.,* 172 F.R.D. 532, 542–43 (N.D.Ga.1997) ("[Rule 23] analysis often mandates that the Court look to the law and facts which comprise the plaintiffs' class action claims"). "This means ensuring through information submitted outside of the pleadings that the requirements of Rule 23 are met, not whether plaintiffs' claims are viable." *Telecomm Technical,* 172 F.R.D. at 543. In other words, the Court

will examine whether sufficient evidence exists to reasonably conclude that Plaintiffs may proceed in the manner proposed, not whether the evidence can withstand any and all factual challenges leveled by Defendants.

## IV. Class Action Certification Under Rule 23

Before certifying a class, the Court first determines whether Plaintiffs have satisfied the requirements of Rule 23(a), and then proceeds to verify that the proposed class falls within one of the categories described in Rule 23(b). *Blue Bird,* 573 F.2d at 315; *Domestic Air,* 137 F.R.D. at 697. Rule 23(a) requires Plaintiffs to show:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Plaintiffs contend they have satisfied these requirements, and further allege that the resulting class fits within Rule 23(b)(3), which requires: (1) questions of law or fact common to members of the class to predominate over questions affecting only individual members, and (2) a class action to be superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3). The Court first considers Plaintiffs' showing under Rule 23(a), and afterward addresses the requirements contained in Rule 23(b)(3).[16]

### A. Rule 23(a) Analysis

#### 1. Numerosity

 The numerosity requirement is satisfied if the proposed class is so numerous that joinder of all members is impracticable. Fed.R.Civ.P. 23(a)(1). The requirement that joinder is impracticable does not mandate that joinder is impossible; rather, Plaintiffs

"need only show that it would be extremely difficult or inconvenient to join all members of the class." *Domestic Air,* 137 F.R.D. at 698. Plaintiffs "generally must proffer some evidence or a reasonable estimate of the number of members comprising the purported class." *In re Disposable Contact Lens Antitrust Litig.,* 170 F.R.D. 524, 529 (M.D.Fla.1996).

 Plaintiffs seek to create a class consisting of:

All those who presently possess or who may subsequently the right to control the disposition of the remains of any decedents delivered for cremation to Defendant Tri–State Crematory, Inc.; all persons who were parties to any contract with any of the defendants regarding funeral arrangements for a decedent who was delivered for cremation to Defendant Tri–State Crematory, Inc.; and the estates of the decedents and the representatives thereof; and a subclass defined as those families whose decedents' uncremated or otherwise desecrated remains have been recovered from the Tri–State Crematory property.

(Master 1st Am. Class Action Compl. ¶ 66.) Plaintiffs have attempted to meet the numerosity requirement by offering evidence of: (1) approximately 228 present clients who have engaged the services of Plaintiffs' Lead and Liaison Counsel in this litigation (Pls.' Class Certification Bench Book Tab 1); (2) approximately 675 decedents delivered to Defendant Tri–State by Funeral Home Defendants over the time period that Defendant Tri–State was in operation (*id.* at Tab 7); (3) 211 identified human remains, found on the property of Defendant Tri–State, that have been identified by forensic identification methodology (2d Aff. of Kris Sperry, M.D. ¶ 8); and (4) 128 unidentified human remains, found on the property of Defendant Tri–State (*id.* ¶¶ 7–8). The Court finds that the class is sufficiently numerous to satisfy Rule 23(a)(1).

 A second element of the numerosity requirement is that the proposed class meet

16. Plaintiffs also contended that Plaintiffs' claims for injunctive and declaratory relief met the requirements of Rule 23(b)(2), but because the Court has determined that Plaintiffs had no standing to bring those claims, the Court need not conduct a Rule 23(b)(2) analysis.

a minimal standard of identifiability. Although "[i]t is not necessary that the members of the class be so clearly identified that any member can be presently ascertained ... [Plaintiffs] must establish that there exists a legally definable 'class' that can be ascertained through reasonable effort." *Earnest v. General Motors Corp.,* 923 F.Supp. 1469, 1473 & n. 4 (N.D.Ala.1996) (quotations and citations omitted). The class simply must meet a "minimum standard of definiteness which will allow the trial court to determine membership in the proposed class." *Id.; see also Telecomm Technical,* 172 F.R.D. at 543–44 (all members of class need not be specifically identified and may be dispersed geographically).

Plaintiffs' proposed class definition specifies two legally definable classes. The Court thus concludes that Plaintiffs' proposed class meets the numerosity requirement of Rule 23(a).

### 2. Commonality

 To satisfy the commonality requirement, Plaintiffs must show the presence of questions of law or fact common to the entire class. Fed.R.Civ.P. 23(a)(2). "[W]hile it is not necessary that every question of law or fact is common to every class member, commonality will not exist as long as there is a predominance of individual issues." *Domestic Air,* 137 F.R.D. at 699 (citing 3 Herbert B. Newburg, Newburg on Class Actions § 18.09, at 464 (2d ed.1985)).

Plaintiffs have listed numerous questions of law or fact common to the entire class, including: (1) whether the Tri–State Defendants mishandled, or failed to carry out the proper cremation of, remains delivered to them for cremation; (2) if the Tri–State Defendants mishandled, or failed to carry out the proper cremation of, remains delivered to them for cremation, over what time period did these acts take place; (3) whether Funeral Home Defendants are directly liable for their own action and inaction; (4) whether Funeral Home Defendants are vicariously liable for the actions of the Tri–State Defendants; and (5) whether Funeral Home Defendants have breached any contracts with Plaintiffs. (Pls.' Class Certification Bench Book Ex. 91.) The Court finds that Plaintiffs have satisfied the minimal showing required to establish commonality of the legal and factual questions raised in this action.

### 3. Typicality

 The typicality requirement is satisfied if the claims and defenses of the representative parties are typical of the claims and defenses of the class. Fed.R.Civ.P. 23(a)(3). A representative plaintiff's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and her or his claims are based on the same legal theory." *Domestic Air,* 137 F.R.D. at 698 (quoting 3 Newburg, *supra,* § 18.08 at 462). In other words, the Court simply inquires whether the named representatives' claims "have the same essential characteristics as the claims of the class at large." *Appleyard v. Wallace,* 754 F.2d 955, 958 (11th Cir.1985) (quoting 7A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1764 (1st ed.1972)). The requirement may be satisfied "even though varying fact patterns support the claims or defenses of individual class members, or there is a disparity in the damages claimed by the representative parties and the other members of the class." *Domestic Air,* 137 F.R.D. at 698 (quoting 7A Wright, Miller, & Kane, Federal Practice and Procedure: Civil at § 1764).

The Court has analyzed each of Plaintiffs' claims to determine whether the named Plaintiffs have standing to bring those claims, and for the reasons set forth *supra* Part II., the Court concludes that the named Plaintiffs' remaining claims arise from the same events and legal theories that give rise to the claims of the class members. In sum, the Court finds that Plaintiffs' claims satisfy the typicality requirement of Rule 23(a)(3).

### 4. Adequacy of Representation

 To satisfy the adequacy requirement, Plaintiffs must show they, as class representatives, will fairly and adequately protect the interests of the class. Fed. R.Civ.P. 23(a)(4). This requirement involves a two-part inquiry: (1) whether Plaintiffs

possess interests that are antagonistic to the interests of other class members, and (2) whether the proposed class' counsel possesses the qualifications and experience to conduct the litigation. *Kirkpatrick,* 827 F.2d at 726; *Telecomm Technical,* 172 F.R.D. at 543–44.

### a. Whether Plaintiffs Have Interests Antagonistic to the Interests of Other Class Members

Funeral Home Defendants' only challenge as to whether the named Plaintiffs' interests are antagonistic to the interests of the class members is a challenge to the named Plaintiffs' standing. The Court addressed those arguments *supra* Part II. and concluded that the named Plaintiffs possess standing. The Court therefore finds that the named Plaintiffs do not have interests antagonistic to the absent class members.

### b. Whether the Proposed Class' Counsel Possesses the Qualifications and Experience to Conduct the Litigation

Defendants do not challenge the qualifications of Plaintiffs' counsel. The Court has reviewed the resumes of Plaintiffs' class counsel. The Court has also read several decisions of other jurisdictions with similar facts to this case in which Plaintiffs' class counsel were involved. The Court has further had the opportunity to observe and hear from Plaintiffs' class counsel in several hearings, and has read numerous briefs submitted by Plaintiffs' class counsel. The Court concludes that Plaintiffs' counsel possess the necessary qualifications and experience to serve as class counsel.

### B. Rule 23(b)(3) Analysis

The Court next examines each of Plaintiffs' legal claims to determine if those claims meet the requirements of Rule 23(b)(3) of the Federal Rules of Civil Procedure. Rule 23(b)(3) raises two questions: (1) whether issues of law or fact common to members of the class predominate over questions affecting only in-dividual members, and (2) whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3).

Before reaching those issues, however, "[i]n order to make the findings required to certify a class action under Rule 23(b)(3) (that common issues predominate, etc.), one must initially identify the substantive law issues which will control the outcome of the litigation." *Alabama v. Blue Bird Body Co., Inc.,* 573 F.2d 309, 316 (5th Cir.1978).[17] Thus, the Court will begin its predominance analysis by setting forth the elements of the substantive law for each cause of action. Then, after analyzing the predominance requirements of Rule 23(b)(3) for each claim, the Court will determine whether the class action is the superior procedural vehicle for all those claims that have satisfied the predominance requirement.

### 1. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). A plaintiff may satisfy this requirement by showing that issues subject to class-wide proof predominate over issues requiring proof that is unique to the individual class members. *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir.1997).

In deciding this question, the Court must keep in mind two related purposes of class action litigation: (1) promoting economies of time, effort, and expense; and (2) providing individuals with relatively small claims the opportunity to assert their rights. Fed. R.Civ.P. 23(b) advisory committee's notes to the 1966 Revision of Rule 23(b)(3); *Amchem,* 521 U.S. at 617, 117 S.Ct. 2231 ("the Advisory Committee [in drafting Rule 23(b)(3)] had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their op-

---

**17.** Opinions of the Fifth Circuit issued prior to October 1, 1981, the date marking the creation of the Eleventh Circuit, are binding precedent on this Court. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209–11 (11th Cir.1981) (en banc).

ponents into court at all' "). If common questions do not predominate, no economies will be achieved through the use of the class action device. Fed.R.Civ.P. 23(b)(3) advisory committee's notes to the 1966 Revision of Rule 23(b)(3).[18]

■ The predominance requirement "does not require that all issues be common to all parties," rather, it mandates that " 'resolution of the common questions affect all or a substantial number of the class members.' " *Watson v. Shell Oil Co.* 979 F.2d 1014, 1022 (5th Cir.1992) (quoting *Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir. 1986)). "Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Rutstein v. Avis Rent–A–Car Sys., Inc.* 211 F.3d 1228, 1234 (11th Cir.2000) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). The Eleventh Circuit has warned that " 'serious drawbacks to the maintenance of a class action are presented where initial determinations, such as the issue of liability vel non, turn upon highly individualized facts.' " *Id.* at 1235–36 (quoting *McCarthy,* 741 F.2d at 1415). Using this standard, the Court evaluates each of Plaintiffs' claims.

### a. Breach of Contract

#### (1) Substantive law

■ "The elements for a breach of contract claim in Georgia are merely 'the breach and the resultant damages to the party who has the right to complain about the contract being broken.' " *Odem v. Pace Acad.,* 235 Ga.App. 648, 654, 510 S.E.2d 326, 331–32 (1998) (quoting *Budget Rent–A–Car of Atlan-*

*ta v. Webb,* 220 Ga.App. 278, 279, 469 S.E.2d 712 (1996)). Therefore, to prevail on a breach of contract claim under Georgia law, Plaintiffs must prove that Funeral Home Defendants breached an enforceable agreement and that Plaintiffs suffered damage as a result of Funeral Home Defendants' breach.

#### (2) Predominance Analysis

■ Breach of contract claims are certifiable as appropriate for class action. *Upshaw v. Ga. Catalog Sales, Inc.,* 206 F.R.D. 694, 700–01 (M.D.Ga.2002); *Mick v. Level Propane Gases, Inc.,* 203 F.R.D. 324, 330–31 (S.D.Ohio 2001); *Collins v. Int'l Dairy Queen, Inc.,* 168 F.R.D. 668, 676 (N.D.Ga.1996); *Kleiner v. First Nat'l Bank of Atlanta,* 97 F.R.D. 683, 691–93 (N.D.Ga. 1983). " '[T]he fact that not all contracts are identical is not sufficient to overcome the apparent commonality of issues that they present.' " *Collins,* 168 F.R.D. at 676 (quoting *Kleiner* 97 F.R.D. at 694–95). Breach of contract issues subject to class-wide proof include a number of issues pertaining to Defendants' liability. Examples of those issues include: (1) whether Funeral Home Defendants owed a contractual duty to anyone other than the contract signatory; (2) whether it was a breach of Funeral Home Defendants' contractual duty to Plaintiffs to send Plaintiffs' decedents to the Tri–State Defendants for cremation; (3) whether Funeral Home Defendants should be liable in contract for any alleged mishandling of Plaintiffs' decedents by the Tri–State Defendants; and (4) for what duration of time any alleged mishandling occurred.[19] The Court finds that these common issues predominate over the issues—primarily those related to damages—that require individual proof.[20]

---

18. At the outset of the predominancy determination, the Court notes that Defendants have raised numerous arguments concerning Plaintiffs' alleged failure to satisfy the predominancy requirement. For the sake of brevity, and in the interest of issuing an Order in a timely fashion, the Court cannot provide a separate analysis of each of Defendants' arguments in this Order. The Court, however, has considered each of Defendants' arguments, and addresses those arguments that are essential to the predominancy determination.

19. This issue assumes that Plaintiffs can prove the existence of mishandling by the Tri–State Defendants.

20. The requirement of determination of damages on an individual basis does not foreclose a finding of predominance or defeat certification of the class. *Upshaw,* 206 F.R.D. at 701 ("Variations in the amount of damages suffered by individual class members will not preclude a finding of predominance or defeat certification of the class."); *Braxton v. Farmer's Ins. Group,* 209 F.R.D. 654, 661 (N.D.Ala.2002) (same, quoting

### b. Fraudulent Conduct as to the Tri–State Defendants

#### (1) Substantive law

 Under Georgia law, "[t]he tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." *Crawford v. Williams,* 258 Ga. 806, 806, 375 S.E.2d 223, 224 (1989).

#### (2) Predominance Analysis

 For two reasons, the Court concludes that Plaintiffs have failed to satisfy the predominancy requirement with respect to Plaintiffs' fraud claims. First, Plaintiffs' fraud claims will require proof of reliance from each individual class member. Courts ordinarily have refused to certify class actions where the actions involve fraud claims that will require individual proof of reliance. *Andrews v. Am. Tel. & Tel. Co.,* 95 F.3d 1014, 1025 (11th Cir.1996) (reversing decision certifying class action where fraud claims required individual proof of reliance); *Mack v. Gen. Motors Acceptance Corp.,* 169 F.R.D. 671, 678 (M.D.Ala.1996) (refusing to certify class action where, among other things, claims required individual proof of reliance); *see also Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 341–42 (4th Cir.1998) (finding plaintiffs' fraud claims did not present suitable basis for class-wide relief because claims required proof of individual reliance); *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 745 (5th Cir.1996) ("a fraud class action cannot be certified when individual reliance will be an issue"). Because the Court must receive proof from each putative class member regarding reliance, individual issues predominate over the common issues presented by the putative class members.

Plaintiffs apparently argue that the Court simply can presume reliance in this case. Plaintiffs' argument, however, ignores the fact that this case presents no special circumstances allowing the Court to presume reliance.[21] Moreover, the "theory of presumptive reliance 'has generally been limited to the securities market where the courts can presume a nearly perfect market in information.' " *In re Ford Motor Co. Bronco II Prod. Liab. Litig.,* 177 F.R.D. 360, 374 (E.D.La.1997) (quoting *Maguire v. Sandy Mac, Inc.,* 138 F.R.D. 444, 451 (D.N.J.1991), *vacated,* 145 F.R.D. 50 (D.N.J.1992)) (internal quotation marks omitted). This case, however, involves state law fraud claims rather than federal securities fraud claims. A presumption of reliance therefore is inappropriate for this case. *Id.*

Second, Plaintiffs' fraud allegations include claims that Funeral Home Defendants "held themselves out to be reputable, experienced and trustworthy entities in the business of funeral cremation and related service." (Master 1st Am. Class Compl. ¶ 128.) This allegation implies that employees and agents of Funeral Home Defendants made oral or written misrepresentations to Plaintiffs. Any oral misrepresentations, by their very nature, would differ from putative class member to putative class member, and would require individual proof. Additionally, the written misrepresentations to the putative class members emanated from any one of the Funeral Home Defendants, and very likely also differed from putative class member to putative class member. Under these circumstances, common issues do not predominate over individual issues. *See, e.g. Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 482 F.2d 880, 882 (5th Cir.1973) ("[C]ourts usually hold that an action based substantially, as here, on oral rather than written misrepresentations cannot be main-

---

*Upshaw,* 206 F.R.D. at 701). *See also Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1197 (6th Cir.1988); *Sala v. Nat'l R.R. Passenger Corp.,* 120 F.R.D. 494, 499 (E.D.Pa.,1988) (" 'it has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate' ") (quoting *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 456 (3d Cir.1977)).

**21.** To the extent that Plaintiffs claim that a fiduciary relationship exists between Plaintiffs and Defendants, the Court rejected this argument *supra* Part II.A.4.d. In any event, Plaintiffs have pointed to no authority, and the Court's own research has uncovered no authority, that supports a finding of a fiduciary relationship between parties in positions similar to those of Plaintiffs and Defendants.

tained as a class action. Similarly, if the writings contain material variations, emanate from several sources, or do not actually reach the subject investors, they are no more valid a basis for a class action than dissimilar oral representations.") (citations omitted); *Mack,* 169 F.R.D. at 678 (declining to certify class where court would be required to "examine the representations made by each dealer and his/her employees to each claimant").

For the reasons given above, Plaintiffs' fraud claims fail to satisfy the predominancy requirement of Rule 23(b)(3). The Court therefore cannot certify those claims pursuant to Rule 23(b)(3).

### c. Negligence

#### (1) Substantive law

■ "To state a cause of action for negligence in Georgia, the following elements are essential: '(1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.'" *Bradley Ctr., Inc. v. Wessner,* 250 Ga. 199, 200, 296 S.E.2d 693, 695 (1982) (quoting *Lee St. Auto Sales, Inc. v. Warren,* 102 Ga.App. 345, 116 S.E.2d 243 (1960)); *accord Wilson v. Mallard Creek Holdings,* 238 Ga.App. 746, 747, 519 S.E.2d 925, 926 (1999).

#### (2) Predominance Analysis

##### (a) Issues Common to All Plaintiffs

■ With respect to negligence, the issues that are common to all Plaintiffs are primarily issues related to Defendants' conduct. Those issue include: (1) the nature and duration of Defendant Tri–State's alleged mishandling of human remains; (2) the standard of care in the funeral industry—alleged to apply to all Defendants—for providing and supervising cremation services; (3) the nature of Defendants' alleged breach of that standard of care, either by action or inaction; and (4) whether "uncertainty" is an actionable injury. (Funeral Home Defs.' Br.

Opposition Pls.' Renewed Mot. Class Certif. at 6.)

##### (b) Issues Unique to Each Plaintiff

The negligence claim issues that will require individual proof include: (1) whether a given Plaintiff's claim is for "uncertainty" with respect to that Plaintiff's decedent's remains, or commingling of that Plaintiff's decedent's remains, or failure to cremate that Plaintiff's decedent's remains; (2) the date each Plaintiff's decedent's body was sent to Defendant Tri–State; (3) the familial relationship between each Plaintiff and that Plaintiff's decedent; and (4) the extent of the injury, if any, each Plaintiff suffered. (Funeral Home Defs.' Br. Opposition Pls.' Renewed Mot. Class Certif. at 82–85.)

##### (c) Predominance of Common Issues over Individual Issues

■ For the following four reasons, the Court finds that issues subject to class-wide proof predominate over issues requiring proof that is unique to the individual class members. First, "[w]hether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Rutstein,* 211 F.3d at 1234 (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 139 (2d Cir.2001), *cert. denied,* 536 U.S. 917, 122 S.Ct. 2382, 153 L.Ed.2d 201 (2002) (citing *Bertulli v. Indep. Ass'n of Cont'l Pilots,* 242 F.3d 290, 298 (5th Cir. 2001)); *accord Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1197 (6th Cir.1988) ("where the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy") (quoted in *In re Telectronics Pacing Sys.,*

*Inc.*, 172 F.R.D. 271, 288 (S.D.Ohio 1997)).[22] The Court is of the opinion that resolving the common issues of Defendants' conduct listed *supra* Part IV.B.1.c.(2)(a), will be of great value in the ultimate resolution of each class member's underlying cause of action. The Court therefore finds that those common issues can best be assessed on a class wide basis.[23] *Rutstein*, 211 F.3d at 1234.

Second, although "the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3) . . . '[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.' " *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir.1998) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed.1986)); *accord Mullen v. Treasure*

*Chest Casino, LLC*, 186 F.3d 620, 626 (5th Cir.1999) (" 'In order to 'predominate,' common issues must constitute a significant part of the individual cases.' " (quoting *Jenkins v. Raymark Indus.*, 782 F.2d 468, 472 (5th Cir. 1986)). The Court finds that the common questions related to Defendants' conduct are unquestionably a very significant aspect—in fact, a pivotal aspect—of this case.

Third, this litigation does not present the type of individuated issues that most frequently lead to denial of class status for lack of predominance of common issues in diversity jurisdiction class action negligence claims. The two types of cases that typically fail the requirement are: (1) cases where variations in state law overwhelm the common issues,[24] and (2) cases where variations in operative facts—often variations in the interactions between the defendant and a given plaintiff—defeat predominance of common issues.[25]

---

**22.** In their brief, Funeral Home Defendants argue that in *Rutstein* "the Eleventh Circuit refused to grant class certification because damages must be individually proved, the same situation as this case." (Funeral Home Defs.' Br. Opposition Pls.' Renewed Mot. Class Certif. at 77.) Funeral Home Defendants quote this passage from *Rutstein*:

> To establish that they are entitled to compensation, plaintiffs will have to prove that they actually suffered some injury, whether it be emotional or otherwise. The idea that individual injury could be settled on a class-wide basis is preposterous. Plaintiffs' claims for damages must "focus almost entirely on facts and issues specific to individuals rather than the class as a whole: what kind of discrimination was each plaintiff subjected to[, and] how did it affect each plaintiff emotionally and physically, at work and at home."

*Rutstein*, 211 F.3d at 1239–40 (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 419 (5th Cir.1998)). The Court does not agree that *Rutstein* stands for the proposition that whenever plaintiffs must prove damages on an individual basis, class certification is improper. In *Rutstein*, a civil rights case under 42 U.S.C.A. § 1981, the plaintiffs' claims "must focus almost entirely on facts and issues specific to individuals rather than the class as a whole." *Id.* (quoting *Allison*, 151 F.3d at 419). In the instant case, however, Plaintiffs' claims focus on facts and issues common to Defendants' alleged behavior, which in turn allegedly affected Plaintiffs in a similar manner. The Court thus concludes that Funeral Home Defendants' reliance on *Rutstein* is inappropriate in this action with respect to the issue of predominance.

**23.** *See also infra* Part IV.B.2. (analyzing Rule 23(b)'s superiority requirement).

**24.** *See, e.g. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (Supreme Court found that common issues did not predominate where class members were·from variety of states requiring application of multitude of different legal standards); *Kirkpatrick*, 827 F.2d at 725 ("the differing standards of liability required by the laws of the various states would render class action treatment unmanageable"); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741–45 (5th Cir.1996) (finding predominance requirement not met where complex choice-of-law issues present).

**25.** *See, e.g. Amchem Prods.*, 521 U.S. at 623–24, 117 S.Ct. 2231 (finding predominance lacking where members of plaintiff class were exposed to asbestos-containing products from different sources over different time periods, and some of class members were asymptomatic while others had developed illnesses); *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 149 (4th Cir.2001) (vacating district court's class certification in action against seller of stucco siding, in part due to failure of plaintiffs to show predominance of common issues, because liability analysis would require plaintiffs to prove individualized details of applicator and contractor behavior with respect to each siding installation); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir.1996) (holding that common issues did not predominate over those affecting only individual members of class so as to support class certification in negligence action against product manufacturer where plaintiffs had used ten different models of

Because of Georgia's choice of law rules, this case has little variation in state law for the Court to consider. Where Georgia's choice of law rules would require the Court to consider the laws of a large number of states, the Court has eliminated claims or potential remedies. *See supra* Part II.A.2. (analyzing choice of law and eliminating claims for punitive damages from class action); *accord Telectronics,* 172 F.R.D. at 294–95. Variations in state law therefore do not overwhelm the common issues in the case at bar.

Further, the facts of this case do not vary greatly from one Defendant to another or from one Plaintiff to another. The facts of this case are essentially identical for every Plaintiff: Plaintiffs allege that each and every Plaintiff relied on a Funeral Home Defendant to handle the cremation of Plaintiff's loved one. Each and every Plaintiff claims that a Funeral Home Defendant failed to perform that service in a manner that conformed to the standard of care for the funeral home industry, and the Plaintiff suffered emotional injury because the Funeral Home Defendant failed to perform to the standard of care. The Court concludes that variations in conduct from one Plaintiff to another do not predominate over the overwhelming common issues related to Defendants' conduct.

Fourth, while the Court observes that negligence claims are not a type of claim that is commonly certified under Federal Rule of Civil Procedure 23, the Court has found ample support in federal decisions for granting certification of negligence claims. *See, e.g. Mullen,* 186 F.3d at 626 (Fifth Circuit affirming decision wherein "district court held that the issues to be tried commonly—seamen status, vessel status, negligence, and seaworthiness—were significant in relation to the individual issues of causation, damages, and contributory negligence"); *Watson v. Shell Oil Co.,* 979 F.2d 1014, 1023 (5th Cir.1992) (affirming class certification for negligence claim in mass tort litigation and noting that "this litigation differs markedly from toxic tort cases ... in which numerous plaintiffs

suffer varying types of injury at different times and through different causal mechanisms, thereby creating many separate issues"); *In re Telectronics,* 172 F.R.D. at 288 (finding common issues predominated where all negligence claims seek to resolve whether defendant is legally responsibly for product failure, and individual issues pertain to causation and damages); *In re Copley Pharm., Inc.,* 158 F.R.D. 485, 492 (D.Wyo.1994) (finding common issues predominate plaintiffs' claims for, *inter alia,* negligence where "issues, surrounding the Defendant's liability for the contaminated [drug], may be tried to a single jury in a unified trial. Then, if the Plaintiffs are successful, class members may pursue their individual cases in separate trials to determine if they suffered an injury from the contaminated [drug], and if so, the proper measure of any damages."); *Sala v. Nat'l R.R. Passenger Corp.,* 120 F.R.D. 494, 499 (E.D.Pa.1988) (concluding common issues predominate where "each of the members of the class will base their liability claim on the same common nucleus of operative facts ... each class member will offer precisely the same proof to establish defendant['s] alleged liability towards and breach of duty to [plaintiffs]"); *Hernandez v. Motor Vessel Skyward,* 61 F.R.D. 558, 561 (S.D.Fla.1973), *aff'd,* 507 F.2d 1278 (5th Cir.1975) (unpublished) (certifying common issue of whether defendants were negligent in preparing either drinking water or food that was available for consumption by passengers as subject to a uniform determination, although issues of proximate cause of each passenger's illness, contract liability, the adequacy of medical treatment afforded each passenger, and damages are individual in nature).

### (3) Conclusion

The Court concludes that certain negligence issues are appropriate for class treatment. Those issue include: (1) the nature and duration of Defendant Tri–State's alleged mishandling of human remains; (2) the standard of care in the funeral industry—alleged to apply to all Defendants—for providing and supervising cremation services;

product, where each had a unique complaint, and each had received different information and

assurances from his treating physician).

(3) the nature of Defendants' alleged breach of that standard of care, either by action or inaction; and (4) whether "uncertainty" is an actionable injury. The Court therefore exercises its power under Rule 23(c)(4)(A) and Rule 23(b)(3) to certify those issues related to Defendants' duty to Plaintiffs and whether Defendants breached that duty.

### d. Willful Interference with Remains and Intentional Mishandling of a Corpse

#### (1) Substantive law

As stated *supra* Part II.A.4.f.(2), Georgia recognizes a quasi property right in the deceased body of a relative, belonging to the husband or wife, and, if neither, to the next of kin. *Welch,* 269 Ga. at 743, 505 S.E.2d 470; *Wilson,* 123 Ga. 62, 51 S.E. 24. "In a very scholarly opinion authored by Justice Lumpkin, the Supreme Court held that there exists a legal duty, enforceable by the next of kin, which requires that a party contractually obligated to handle a corpse, do so non-negligently and with utmost dignity." *Mayer v. Turner,* 142 Ga.App. 63, 64–65, 234 S.E.2d 853, 855 (1977) (citing *Wilson,* 123 Ga. at 62, 51 S.E. 24).

In this cause of action, Plaintiffs claim that Defendants' alleged misconduct was intentional. Where, as in this case, the only injury claimed is to the peace, happiness, or feelings of the plaintiff, the plaintiff may recover damages, pursuant to O.C.G.A. § 51–12–6,[26] if defendant's behavior is a malicious, wilful or wanton desecration of the body. *See, e.g., Bauer v. N. Fulton Med. Ctr.,* 241 Ga.App. 568, 574, 527 S.E.2d 240, 246 (1999) (collecting cases). To show wilful or wanton conduct, a Plaintiffs must demonstrate that Defendant's behavior evidenced a wilful intention to inflict injury, or else was so charged with indifference to the consequences as to justify finding a wantonness equivalent in spirit to actual intent. *See, e.g., Pyle,* 243 Ga.App. at 400, 531 S.E.2d at 740; *accord McNeal Loftis, Inc. v. Helmey,.* 218 Ga.App. 628, 629 & 629 n. 1, 462 S.E.2d 789, 790 (1995) (collecting cases). "Damages [for

mental suffering alone] may be recovered in those cases where the plaintiff has suffered at the hands of the defendant a wanton, voluntary, or intentional wrong the natural result of which is the causation of mental suffering and wounded feelings." *Dunn v. Western Union Telegraph Co.,* 2 Ga.App. 845, 846, 59 S.E. 189 (1907) (quoted in *Clark v. West,* 196 Ga.App. 456, 461, 395 S.E.2d 884, 888 (1990)) (Beasley, J., concurring specially). The measure of damages is "the enlightened consciences of impartial jurors." O.C.G.A. § 51–12–6.

#### (2) Predominance Analysis

The predominance analysis for this claim is nearly identical to the predominance analysis for Plaintiffs' negligence claim, discussed *supra* Part IV.B.1.c.(2). Two additional common issues, critical to this claim for intentional misconduct are: (1) whether Defendants' behavior evidenced a wilful intention to inflict Plaintiffs' injuries, or was so charged with indifference to the consequences as to justify finding a wantonness equivalent actual intent, *see Pyle,* 243 Ga. App. at 400, 531 S.E.2d at 740; ,and (2) whether Defendants' behavior would naturally cause mental distress and wounded feelings, *see Dunn,* 2 Ga.App. at 846, 59 S.E. at 189. These issues, much like the issues discussed *supra* Part IV.B.1.c.(2)(a), focus on Defendants' behavior. For the reasons given in the predominance analysis for Plaintiffs' negligence claims *supra* Part IV.B.1.c.(2)(c), as well as the additional common issues listed in the previous paragraph, the Court finds the predominance requirement is satisfied for Plaintiffs' claim for willful interference with remains and intentional mishandling of a corpse.

### e. Negligent Interference with Remains and Mishandling of a Corpse

#### (1) Substantive law

Here, Plaintiffs claim that Defendants' alleged misconduct was negligent with respect to handling decedents' remains.

---

**26.** O.C.G.A. § 51–12–6 provides in relevant part:
51–12–6 Damages for injury to peace, happiness, or feelings.
In a tort action in which the entire injury is to the peace, happiness, or feelings of the plaintiff, no measure of damages can be prescribed except the enlightened consciences of impartial jurors.
O.C.G.A. § 51–12–6.

[A] claim for negligent mishandling of a corpse is premised upon the presence of two elements. The first is the 'quasi-property' right that exists in the dead body of a relative. The second is the negligent breach of a contract to carry out the expressed wishes of the next of kin regarding the disposition of that dead body[, i.e., burial, *cremation,* or anatomical donation]. *Wages v. Amisub of Ga.,* 235 Ga.App. 156, 157–58, 508 S.E.2d 783, 784–85 (1998) (emphasis added) (internal quotation marks omitted); *accord McCoy v. Ga. Baptist Hosp.,* 167 Ga.App. 495, 497, 306 S.E.2d 746, 747–48 (1983); *Mayer,* 142 Ga.App. at 64–65, 234 S.E.2d at 855; *Wilson,* 123 Ga. at 62, 51 S.E. 24.

#### (2) Predominance Analysis

For the reasons given in the predominance analysis for Plaintiffs' negligence claims *supra* Part IV.B.1.c.(2)(c), the Court finds the predominance requirement is satisfied for Plaintiffs' claim for negligent interference with remains and mishandling of a corpse.

### f. Intentional Infliction of Emotional Distress

#### (1) Substantive law

■ In Georgia, a plaintiff must prove four elements to sustain a claim of intentional infliction of emotional distress: " '(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; and (4) The emotional distress must be severe.' " *Hill v. City of Fort Valley,* 251 Ga.App. 615, 616, 554 S.E.2d 783, 785 (2001) (quoting *Northside Hosp., Inc. v. Ruotanen,* 246 Ga.App. 433, 435, 541 S.E.2d 66, 68–69 (2000)); *accord Phinazee v. Interstate Nationalease,* 237 Ga.App. 39–40, 514 S.E.2d 843 (1999).

Georgia courts have further characterized the requisite defendant conduct by stating that defendant's conduct must be "malicious, wilful or wanton," *Hall v. Carney,* 236 Ga. App. 172, 174, 511 S.E.2d 271, 274 (1999), and

that wilful or wanton conduct may be evidenced by a wilful intention to inflict injury, or by a reckless disregard for the rights of plaintiff equivalent to an intentional violation of those rights, *Jacobus v. Congregation of the Children of Israel,* 107 Ga. 518, 33 S.E. 853, 855 (1899). *Accord Pyle v. Pyle,* 243 Ga.App. 398, 400, 531 S.E.2d 738, 740 (2000); *McNeal Loftis, Inc. v. Helmey,* 218 Ga.App. 628, 629, 462 S.E.2d 789, 790 (1995). A final requirement with respect to defendant's conduct is that it must be " 'directed toward the plaintiff.' " *Hall,* 236 Ga.App. at 174, 511 S.E.2d at 274 (quoting *Ryckeley v. Callaway,* 261 Ga. 828, 829, 412 S.E.2d 826, 826 (1992)); *accord Hill,* 251 Ga.App. at 617, 554 S.E.2d at 786.

#### (2) Predominance Analysis

■ To sustain Plaintiffs' claim for intentional infliction of emotional distress, therefore, Plaintiffs must prove that the conduct of Funeral Home Defendants or the Tri-State Defendants was directed toward Plaintiffs.[27] Such a showing will be highly individualized and unique to each individual class member. Proof that Defendants' conduct was directed toward each individual class member thus would predominate over issues subject to class wide proof for this claim.

The Court therefore finds that Plaintiffs' claim for intentional infliction of emotional distress fails to meet the predominance requirement of Rule 23(b)(3). The Court consequently cannot certify that claim pursuant to Rule 23(b)(3).

### 2. Superiority of the Class Action

■ "That common questions predominate is not itself sufficient to justify a class action under subdivision (b)(3), for another method of handling the litigious situation may be available which has greater practical advantages." Fed.R.Civ.P. 23, Advisory Committee Note to the 1966 Amendment. Plaintiffs must also demonstrate that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). " 'The rule asks us to balance, in terms of fairness

---

**27.** In making this predominance determination, the Court is not expressing an opinion as to the

likelihood of Plaintiffs' ability to produce such proof.

and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication.'" *In re Telectronics,* 172 F.R.D. at 290 (quoting *Georgine v. Amchem Prods., Inc.,* 83 F.3d 610, 632 (3d Cir. 1996), *aff'd* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

■ At the class certification hearing, Funeral Home Defendants argued against the superiority of class certification, asserting that individual lawsuits against the various Funeral Home Defendants would be fairer and more efficient:

> From all the [funeral home defendants'] lawyers: let me deal with my funeral home. Let the decedent who wants to sue my funeral home sue us. Let us deal with our defenses, statute of limitations, let us deal with the jurisdictional problems, but let us take them one at a time and not be lumped in with fifty-five or fifty other funeral homes having to deal with what their situation was with a specific plaintiff.

(Dec. 18, 2002, Hr'g Tr. at 171–72.) The Court does not agree with Funeral Home Defendants that individual lawsuits would be superior to a class action.

The overarching fact that leads the Court to this conclusion is this: at one time or another, all the Funeral Home Defendants used the services of the Tri–State Defendants. For this reason, the Court finds that resolution of certain fundamental issues—whether and over what time period misconduct occurred at Defendant Tri–State, and what Funeral Home Defendants knew or should have known about it—in one forum, is the superior judicial alternative for Plaintiffs, Funeral Home Defendants, the Tri–State Defendants, and for the judicial system itself. Otherwise, federal and state courts in Alabama, Georgia, Tennessee, and elsewhere will have to listen to the same evidence about those fundamental issues again and again. *See Mullen,* 186 F.3d at 628 (approving dis-

trict court's bifurcated-trial plan where the district court found that the class action would "promote judicial economy and avoid the wasteful, duplicative litigation which would inevitably result if these cases were tried individually") (quoting district court).

The Court also finds that the lack of complex choice-of-law issues, and the fact that the Plaintiff class numbers in the hundreds, not thousands or millions, supports a conclusion that the class action is the superior litigation vehicle. *Mullen,* 186 F.3d at 627. The Court foresees that this case can proceed in two phases. In the first phase, the Court would try the common issues related to Defendants' duty or duties to Plaintiffs and Defendants' alleged breach of that duty or those duties. During the second phase, the Court would try the unique issues of causation and damages for each Plaintiff individually.[28]

The Fifth Circuit has discussed bifurcated class actions in claims somewhat similar to the claims now before the Court:

> [*Mullen*] is akin to other bifurcated class actions this Court has approved. *See Watson v. Shell Oil Co.,* 979 F.2d 1014 (5th Cir.1992) (finding no abuse in the district court's certification of a bifurcated class action arising from an oil refinery explosion where liability and punitive damages would be resolved commonly and injury, causation, and actual damages would be resolved individually); *Jenkins,* 782 F.2d [at] 468 (finding no abuse of discretion in district court's certification of a bifurcated class action where asbestos producers' "state of the art defense" as well as product identification, product defectiveness, negligence, and punitive damages would be resolved commonly and causation, actual damages, and comparative fault would tried individually); *Hernandez v. Motor Vessel Skyward,* 61 F.R.D. 558 (S.D.Fla. 1973) (certifying bifurcated class action on behalf of 350 passengers who were fed

---

**28.** There are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including: (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.

*In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 141 (2d Cir.2001).

contaminated food aboard cruise ship where negligence would be tried commonly and causation and damages would be tried individually), *aff'd*, 507 F.2d 1278–79 (5th Cir.1975) (unpublished).

*Mullen*, 186 F.3d at 628 (approving bifurcation where issues of seamen status, vessel status, negligence, and seaworthiness to be tried commonly and issues of causation, damages, and contributory negligence to be tried individually).

■ The Court has identified one specific problem with bifurcation of a class action, however, that deserves special attention. A class action cannot be the superior method of adjudicating a controversy if the bifurcation of the class action violates the Seventh Amendment of the United States Constitution.[29] "The Seventh Amendment entitles parties to have fact issues decided by one jury, and prohibits a second jury from reexamining those facts and issues." *Castano*, 84 F.3d at 750. "The Seventh Amendment does not prohibit bifurcation of trials as long as the 'the judge [does] not divide issues between separate trials in such a way that the same issue is reexamined by different juries.'" *Mullen*, 186 F.3d at 628 (quoting *In re Rhone–Poulenc Rorer Inc.*, 51 F.3d 1293, 1303 (7th Cir.1995)); *see also Blue Bird Body Co.*, 573 F.2d at 318 (limiting use of bifurcation because of "a recognition of the fact that inherent in the Seventh Amendment guarantee of a trial by jury is the general right of a litigant to have only one jury pass on a common issue of fact.") The Court believes that the "risk [of Seventh Amendment problems] has been avoided here by leaving all issues of causation for the phase-two jury." *Mullen*, 186 F.3d at 620.

In many appellate opinions on Seventh Amendment issues for bifurcated class actions, the entangling topic of comparative negligence arises. No general consensus has been reached in the Circuits with respect to the effect of comparative negligence on the Seventh Amendment and bifurcation. *Compare Rhone–Poulenc*, 51 F.3d at 1303 (Sev-enth Circuit holding district court's trial plan contravenes Seventh Amendment because issues of comparative negligence and proximate causation could not be determined in phase two of trial without re-examining, and in some cases effectively re-deciding, underlying negligence decision from phase one); *Castano*, 84 F.3d at 734 (Fifth Circuit finding that bifurcating defendant's conduct from comparative negligence results in risk of running afoul of Seventh Amendment) *with Valentino v. Carter–Wallace*, 97 F.3d 1227, 1232 (9th Cir.1996) (declining to endorse reasoning of Seventh Circuit in *Rhone–Poulenc*, 51 F.3d at 1303, because reasoning in *Rhone–Poulenc* may not be in line with Ninth Circuit law); *Mullen*, 186 F.3d at 629 (Fifth Circuit holding no Seventh Amendment problem exists where defendant's negligence tried in phase one and issues of plaintiff's comparative negligence, causation, and damage tried in phase two, because focus of comparative negligence is on causation and all issues of causation tried by one jury in phase two).

The Court finds, however, that it need not decide whether the issue of comparative negligence results in a trial plan in contravention of the Seventh Amendment. Although Funeral Home Defendants have pleaded comparative negligence as a defense, (Funeral Home Defs.' Answer Master 1st Am. Class Action Compl., Eighteenth Defense), they have adduced no evidence in support of their pleading. The Court must look beyond the pleadings at the class certification stage of a lawsuit. *Falcon*, 457 U.S. at 160, 102 S.Ct. 2364. Because Defendants have produced no evidence of negligence on the part of Plaintiffs, the Court finds that bifurcation of this litigation does not present any Seventh Amendment problems.[30]

In summary, the Court finds that a bifurcated class action is the fairest and most efficient method by which to adjudicate this controversy. The Court therefore concludes that the superiority requirement of Rule 23(b)(3) is met.

---

**29.** "[N]o fact tried by jury, shall be otherwise reexamined in any Court of the United States ..." United States Const. amend. VII.

**30.** If, at some future stage of this litigation, Defendants produce evidence of Plaintiffs' negligence, the Court will take remedial measures as required.

### 3. Summary of Rule 23(b)(3) Analysis

In sum, the Court finds that Plaintiffs' claims for (1) breach of contract; (2) negligence; (3) willful interference with remains and intentional mishandling of a corpse; and (4) negligent interference with remains and mishandling of a corpse satisfy the predominance and superiority requirements of Rule 23(b)(3). The Court therefore certifies those claims for class action treatment.

## V. Class Definition

Plaintiffs seek to certify a class defined as:

All those who presently possess or who may subsequently acquire the right to control the disposition of the remains of any decedents delivered for cremation to Defendant Tri–State Crematory, Inc.; all persons who were parties to any contract with any of the defendants regarding funeral arrangements for a decedent who was delivered for cremation to Defendant Tri–State Crematory, Inc.; and the estates of the decedents and the representatives thereof; and a subclass defined as those families whose decedents' uncremated or otherwise desecrated remains have been recovered from the Tri–State Crematory property.

(Master 1st Am. Class Action Compl. ¶ 66.) For reasons explained in more detail above, the Court makes several observations with respect to the class definition: (1) the Court finds no support in Georgia law that allows Plaintiffs' tort claims to be possessed by any person other than the decedent's next of kin,[31] *see supra* Part IV.B.1.c.-IV.B.1.e. (discussing substantive law for Plaintiffs' tort claims that meet predominance analysis); (2) the Court finds that Plaintiffs have produced no evidence of misconduct related to Plain-

tiffs' claims for any year prior to 1988, *supra* Part I.B.1.b.; and (3) the Court notes that the Plaintiff class may not include those seeking to bring claims for breach of contract that are barred by Georgia's six-year statute of limitations, *see supra* Part II.A.4.b. (citing and discussing O.C.G.A. § 9–3–24).

The Court therefore certifies a Plaintiff class defined as follows:

All those who are or were next of kin of any decedents delivered for cremation to Defendant Tri–State Crematory from the years 1988 to 2002; all persons or entities who were parties to any contract with any Defendant regarding funeral arrangements for a decedent who was delivered for cremation to Defendant Tri–State Crematory from 1988 to 2002 whose claim is not barred by the applicable statute of limitations; and a subclass defined as the next of kin of decedents whose uncremated or otherwise desecrated remains have been recovered from the property of Defendant Tri–State Crematory or the property surrounding Defendant Tri–State.

## VI. Conclusion

ACCORDINGLY, the Court **DENIES AS MOOT** Plaintiffs' Motion to Certify Class Action [176], **GRANTS** Plaintiffs' Motion for Designation of Additional Proposed Class Representative [177], and **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Amended Motion to Certify Class Action [271].

---

**31.** At the Class Certification hearings, Plaintiffs cited *Wright v. Hollywood Cemetery Corp.*, 112 Ga. 884, 38 S.E. 94 (1901) for the proposition that Georgia law allows recovery in tort for relatives of the decedent other than the next of kin in an interference with the right of burial case. (Dec. 17, 2002, Hr'g Tr. at 44–45.) In *Wright,* the court allowed recovery for the next of kin, a sibling. 38 S.E. at 96. Because the sibling was a minor, however, the court stated that the "right

and duty" of giving the decedent a burial "devolved" upon the grandmother as "the next of kin of full age." *Id.* The *Wright* case adheres to the familiar rule that the Court follows in this case: "Except where the decedent leaves a husband or wife surviving, the right to properly dispose of the dead body belongs to the next of kin." *Id.* at 95. The Court concludes that under Georgia law the right in tort does not extend to close family members beyond the next of kin.